### PEOPLE v CATEY

Docket No. 69275. Submitted March 12, 1984, at Lansing.—Decided June 28, 1984. Leave to appeal applied for.

Defendant, Christopher C. Catey, was convicted by a jury in the Eaton Circuit Court of second-degree murder and the burning of a dwelling house. Defendant appeals alleging that the trial court, Richard Robinson, J., erred in allowing into evidence certain incriminating statements made by the defendant during police questioning and a statement made by the defendant to a cellmate. Defendant alleges violations of his right to remain silent and of his right to counsel. *Held:*

1. The trial court did not err in determining, after a *Walker* hearing, that the defendant had voluntarily given incriminating statements to the police. The facts indicate that the defendant did not unequivocally invoke his right to remain silent.

2. There is adequate evidence in the record to support the trial court's finding that defendant did not invoke the right to counsel.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 582, 585, 587.

Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L Ed 2d 1735; 4 L Ed 2d 1833; 12 L Ed 2d 1340; 16 L Ed 2d 1294; 22 L Ed 2d 872.

Constitutional aspects of procedure for determining voluntariness of pretrial confession. 1 ALR3d 1251.

[2, 5, 9] 5 Am Jur 2d, Appeal and Error § 703.

[2, 9] 5 Am Jur 2d, Appeal and Error §§ 822, 898.

[2] 29 Am Jur 2d, Evidence § 590.

[3] 5 Am Jur 2d, Appeal and Error §§ 545 *et seq.,* 601, 602.

[4-8, 10] 29 Am Jur 2d, Evidence §§ 545, 555, 638, 640.

What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

Necessity of informing suspect of rights under privilege against self-incrimination, prior to police investigation. 10 ALR3d 1054.

[9, 10] 21 Am Jur 2d, Criminal Law §§ 988-990.

Accused's right to counsel under the Federal Constitution—Supreme Court cases. 2 L Ed 2d 1644; 9 L Ed 2d 1260.

1. Evidence — *Walker* Hearings.

 The purpose of a *Walker* hearing is to determine whether or not a defendant's statement sought to be admitted as evidence was given voluntarily.

2. Evidence — *Walker* Hearings — Appeal.

 An appellate court will examine the entire record and reach an independent determination of voluntariness when reviewing a trial court's ruling in a *Walker* hearing; the decision is to be affirmed, absent a definite and firm conviction that the trial court erred; the appellate court should defer to the trial court's findings if there is conflicting evidence and the determination of voluntariness is largely dependent upon the credibility of the witnesses.

3. Appeal — Preserving Question.

 The Court of Appeals will not, as a general rule, review an issue raised for the first time on appeal, however, appellate review of an issue not raised in the trial court is appropriate where an important constitutional question is raised regarding the admissibility of the evidence which is decisive of the outcome of the case.

4. Criminal Law — Fifth Amendment — Right to Remain Silent — Constitutional Law.

 A criminal suspect is free at any time to exercise his right to remain silent and all interrogation of the suspect must cease if such right is asserted (US Const, Am V).

5. Criminal Law — Fifth Amendment — Right to Remain Silent — Constitutional Law — Appeal.

 The Court of Appeals is obligated to make its determination regarding a defendant's invocation of his right to remain silent by a *de novo* review of the record where a defendant raises such issue for the first time on appeal (US Const, Am V).

6. Criminal Law — Fifth Amendment — Right to Remain Silent — Subsequent Interrogations — Constitutional Law.

 The interrogation of a prisoner may continue once the prisoner has unequivocally stated that he wishes to remain silent, if the prisoner has not on his own initiative stated that he no longer wishes to remain silent, only when: (1) the police resume questioning after a significant period of time; (2) a fresh set of *Miranda* warnings is given; and (3) the subsequent interrogation relates to a crime that was not the subject of the earlier interrogation; furthermore, the subsequent interrogation may not have the characteristics of a repeated effort to wear down

the resistance of the prisoner and make him change his mind (US Const, Am V).

7. CRIMINAL LAW — FIFTH AMENDMENT — RIGHT TO REMAIN SILENT — EVIDENCE — SUBSEQUENT STATEMENTS.

The admissibility of statements obtained after a person in custody has decided to remain silent depends under the *Miranda* doctrine on whether his right to cut off questioning was scrupulously honored (US Const, Am V).

8. CRIMINAL LAW — FIFTH AMENDMENT — RIGHT TO REMAIN SILENT — CONSTITUTIONAL LAW.

The police are permitted to seek a clarification of a defendant's equivocal exercise of his right to remain silent (US Const, Am V).

9. APPEAL — SIXTH AMENDMENT — RIGHT TO COUNSEL — WAIVER — CONSTITUTIONAL LAW.

An appellate court must, as a general rule, examine the entire record and draw its own conclusions when reviewing a trial court's rulings regarding the voluntariness of a defendant's waiver of his right to counsel, however, the appellate court should defer to the trial court's findings if there is conflicting evidence and the determination of voluntariness is largely dependent on the credibility of the witnesses (US Const, Am VI).

10. CRIMINAL LAW — RIGHT TO COUNSEL — CONSTITUTIONAL LAW.

All questioning of a defendant must cease until counsel is present once the defendant has exercised his right to counsel unless the defendant unequivocally asks to speak to the police and specifically states that he no longer desires the assistance of counsel (US Const, Am VI).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul F. Berger,* Prosecuting Attorney, and *C. Sherman Mowbray,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Terence R. Flanagan),* for defendant on appeal.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

SHEPHERD, P.J. Defendant was charged with murdering Violet Tabatto and the wilful or malicious burning of a dwelling house. Following a five-day jury trial, defendant was convicted of second-degree murder and the burning of a dwelling house, MCL 750.317; MSA 28.549 and MCL 750.72; MSA 28.267. He appeals as of right.

The charges against defendant stemmed from the stabbing death of his landlady, Violet Tabatto, on September 25 or 26, 1981, in the rooming house in which he resided in Grand Ledge, Michigan. The prosecutor's version of the crime was that defendant and Mrs. Tabatto had an argument when he returned to the rooming house at approximately 11 p.m. on Friday, September 25, 1981. The prosecutor theorized that defendant struck the victim and then stabbed her once in the chest with a butcher knife which he had obtained from the kitchen of the house. In an effort to cover up the crime, defendant then took gasoline from his motorcycle and set fire to the house. The primary issue in this case involves incriminating statements which defendant gave to Detectives Boggs and Parkinson of the Michigan State Police on Monday, September 28, 1981. It is defendant's theory that his confession was a product of psychological coercion on the part of the detectives to whom he confessed.

Mrs. Tabatto's body was found in her bed. Grand Ledge Fire Chief Graydon Briggs testified that upon inspection of the building he "observed what appeared to be three separate fires". Briggs stated that there was no connection between any of the

* Circuit judge, sitting on the Court of Appeals by assignment.

fires and that it was obvious that someone had purposely set three separate fires.

Prior to removing the victim's body from the building, investigators discovered that she had a slit-like puncture wound in her chest which was approximately 1 to 1-1/4 inches long. Grand Ledge Police Officer Gregory Bria made the determination that the puncture was a stab wound. The physician who performed the autopsy, Laurence Simson, testified that the wound was indeed a stab wound and that it was also the cause of death.

The police immediately began an investigation. Grand Ledge Police Officer Robert Sipple testified that he went to defendant's mother's apartment at approximately 6:15 a.m. on September 26, 1981, to discuss the crime with defendant. Defendant talked to Sipple but denied any involvement in the killing. At approximately 7 a.m., Officers Bria and Flitton went to the apartment and spoke with defendant. Defendant spoke with these officers and again denied any involvement in the killing. Defendant voluntarily agreed to go to the police station where he made a nonincriminating written statement that afternoon.

The disputed incriminating statements were those made by defendant on September 28, 1981, to detectives at the Lansing State Police Post. Defendant also made incriminating statements to Martin Daughenbaugh, his cellmate at the Eaton County Jail, in which he admitted stabbing Mrs. Tabatto. On May 21, 1982, a *Walker [People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965)] hearing was held to determine the admissibility of the statements.

After being contacted by Officer Bria, defendant agreed to take a polygraph examination. The polygraph examiner, Roger Burns, of the Michigan

State Police, testified that shortly after he was introduced to defendant he advised him of his *Miranda [Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] rights. Defendant indicated that he understood his rights. Burns stated that he noticed nothing unusual about defendant's physical or mental condition during the examination.

A polygraph test consists of three parts, the first part being the pre-test where the subject is interviewed regarding background information resulting in the formulation of questions to be asked. The second part is the actual testing phase. The third component of the test is the post-test interview at which the subject is advised of the results and given an opportunity to explain results indicating deception. The facilities at the police post were equipped to allow persons in an adjacent office to monitor the examination via closed circuit television. Detectives Boggs and Parkinson observed the polygraph examination on closed circuit television.

The polygraph examination lasted approximately three hours. Near the end of the test Burns informed defendant that he felt defendant was not being truthful during the polygraph examination. After being so informed, Burns testified, "He [defendant] said he didn't want to talk with me any longer". Burns then went outside the testing room and told Boggs that defendant wanted to leave. Sergeant Boggs then came to the room and took defendant out of the room.

Boggs testified that he observed defendant say to Burns, "I do not want to talk to you anymore". Boggs stated that he immediately went into the room and asked defendant if he would talk to him. Boggs stated that defendant replied that he would

talk to him. He and defendant then began walking to Boggs' office.

Upon arriving at Boggs' office, defendant was readvised of his *Miranda* rights. Boggs then told defendant what he thought had actually occurred on the night of the killing. The sergeant told defendant that he thought that defendant had gone home drunk, began to argue with Mrs. Tabatto, got angry, hit her, panicked and then killed her. Boggs testified that, after being told the foregoing, defendant broke down and started to cry. He cried for approximately five minutes and then made a statement in which he confessed to the killing and to setting fire to the home in an attempt to cover up the crime. After being readvised of his *Miranda* rights, defendant made a second incriminating statement which was tape-recorded and played at the *Walker* hearing and at trial.

The testimony of defendant and of the police officers who participated in his interrogation differed as to whether defendant ever requested an attorney to be present at his interrogation. Defendant testified at the *Walker* hearing that after Sergeant Burns accused him of lying during the polygraph examination he told Burns that he no longer wished to speak to him and that he wanted to see a lawyer. Defendant stated that Burns kept talking to him and once again he stated that he wanted to stop talking and to see a lawyer. Defendant said that he definitely asked for a lawyer three times during the course of his interrogation.

In his recorded confession defendant was asked whether he understood that he could not be questioned without his consent in the absence of an attorney. Defendant answered the question "yes" and that he was aware that if he did not have an

attorney that one would be appointed for him. On cross-examination, defendant stated that he did not ask for an attorney at that time because he was "confused".

All four of the police officers present during the proceedings at the state police post (Bria, Burns, Boggs and Parkinson) denied that defendant ever requested to speak to an attorney at any time. Detective Parkinson stated that at no time did defendant assert his right to an attorney and that he affirmatively waived that right.

After hearing the testimony from the witnesses and the attorneys' arguments, the trial court made its ruling. The court recapitulated the evidence which it had considered and found that defendant's statements were voluntarily given and were admissible into evidence. The court also ruled that the statement given by defendant to his cellmate, Daughenbaugh, was admissible.

## Was Defendant's Fifth Amendment Right To Remain Silent Violated?

The purpose of a *Walker* hearing *(People v Walker, supra)* is to determine whether or not a defendant's statement was given voluntarily. When reviewing a trial court's ruling in a *Walker* hearing, an appellate court will examine the entire record and reach an independent determination of voluntariness. Absent a definite and firm conviction that the trial court erred, the decision will be affirmed. *People v Crawford,* 89 Mich App 30, 33; 279 NW2d 560 (1979). If there is conflicting evidence and the determination of voluntariness is largely dependent upon the credibility of witnesses, the appellate court should defer to the trial court's findings. *People v Joyner,* 93 Mich App 554, 558; 287 NW2d 286 (1979). Review of the facts of

the instant case leads us to conclude that the trial court did not err in holding that defendant had voluntarily given incriminating statements to the police.

Initially, we note that the issue of whether defendant's Fifth Amendment right to remain silent was violated was not raised in the proceedings below. At the *Walker* hearing, the only question addressed by the parties was whether defendant's Sixth Amendment right to counsel had been violated. As a general rule, this Court will not review an issue raised for the first time on appeal. *People v Davis,* 122 Mich App 597; 333 NW2d 99 (1983); *People v Smith,* 118 Mich App 366; 325 NW2d 429 (1982). However, where an important constitutional question is raised regarding the admissibility of the evidence and is decisive of the outcome of the case, appellate review is appropriate. *People v Guy,* 118 Mich App 99; 324 NW2d 547 (1982); *People v Harris,* 95 Mich App 507; 291 NW2d 97 (1980). Since we view this issue as being outcome-determinative it is discussed below.

This Court has recognized that under the United States Supreme Court's decision in *Miranda v Arizona, supra,* a suspect is free at any time to exercise his right to remain silent, and all interrogation must cease if such right is asserted. *People v Rowen,* 111 Mich App 76, 80; 314 NW2d 526 (1981). The issue in the instant case is whether defendant actually invoked his Fifth Amendment right to remain silent. It does not appear to us that defendant unequivocally invoked that right.

As is stated above, the trial court did not address these specific issues in making its ruling. Thus, this Court is obliged to make its determination by a *de novo* review of the record. Here, both parties admit that defendant told Sergeant Burns

that he no longer wished to speak with him. The issue is whether this was a sufficient assertion of defendant's right to remain silent.

The prosecutor relies on Sergeant Boggs' testimony that after defendant indicated that he did not wish to speak with Sergeant Burns, Boggs entered the room and asked defendant whether he would speak to him. Boggs stated that he did not view defendant's reaction as an invocation of his right to remain silent, as defendant's words were a natural reaction to Burns' calling defendant a liar. When Boggs entered the room and asked defendant if he would talk to him, defendant stated that he would do so. Boggs then took defendant to his office where defendant made his incriminating statements. Thus it is the prosecutor's position that defendant never actually invoked his right to remain silent and, therefore, his right to silence was not violated.

It is defendant's contention that, by informing Sergeant Burns of the fact that he no longer wanted to talk to him, defendant had invoked his right to remain silent and, therefore, it was improper for the officers to continue any interrogation. Defendant testified at the *Walker* hearing that Boggs came to the polygraph examination room and asked him to accompany him to his office. Defendant's testimony does not indicate that Boggs asked him if he wanted to talk to him. After going to Boggs' office, defendant made a recorded statement at the outset of which he was readvised of his *Miranda* rights and knowingly waived them. Defendant asserts that he did not request an attorney at that time because he was confused.

Our review of the record leads us to conclude that defendant did not unequivocally invoke his Fifth Amendment right to remain silent. The rec-

ord reveals that defendant did not indicate that he would not talk to any police officer but only that he would not speak to Sergeant Burns. It was within the province of the trial court to believe Sergeant Boggs' testimony that defendant's remark to Burns was merely a hostile response to being accused of lying. The fact that defendant cooperated with Sergeant Boggs after being advised of his *Miranda* rights at least three times indicates to us that defendant's right to remain silent was not invoked in a manner that precluded Sergeant Boggs from continuing the questioning.

The *Miranda* Court addressed the issue of when a defendant may be held to have properly waived his rights after first invoking them:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Miranda, supra,* pp 473-474. (Footnote omitted.)

Thereafter, the Supreme Court said in *Michigan v Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975), (in holding that a statement secured after the giving of *Miranda* warnings was admissible):

"This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated

efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and a provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Mosley, supra,* pp 105-106.

From this language we conclude that once a prisoner has stated that he wishes to remain silent, interrogation may only continue (if the prisoner has not on his own initiative stated that he no longer wishes to remain silent) when:

(a) the police resume questioning after a significant period of time;

(b) a fresh set of *Miranda* warnings is given;

(c) the subsequent interrogation relates to a crime that was not the subject of the earlier interrogation.

Furthermore, even if the above criteria are met, the subsequent interrogation may not have the characteristics of a repeated effort to wear down the resistance of the prisoner and make him change his mind.

All of these requirements are in furtherance of the *Mosley/Miranda* doctrine that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored' ". *Michigan v Mosley, supra,* p 104.

However, our adoption of the above rule does not end our inquiry in the context of this case. There was testimony that defendant made a statement that he no longer wished to speak to the polygraph examiner, at which time Sergeant Boggs sought to clarify that statement by inquiring

whether defendant was willing to speak to Boggs. Once a defendant chooses to remain silent, the police are permitted to seek a clarification of an equivocal exercise of that right. *Thompson v Wainwright,* 601 F2d 768 (CA 5, 1979). Had the defendant's exercise of the right to remain silent been unequivocal, the police would not have been able to initiate any new interrogation subject to the attenuations of the rule as enunciated in *Michigan v Mosley, supra.* Since it was not clear in the instant case that defendant wished to cut off all questioning regardless of source, Sergeant Boggs' query was not improper.

## Was Defendant's Sixth Amendment Right To Counsel Violated?

The basic issue in the instant case is one of credibility. The trial court was faced with testimony on the part of defendant that he had requested that counsel be present during his interrogation a number of times, but that these requests were ignored by the police. On the other hand, there was unequivocal testimony by the four officers who had participated in the interrogation and the polygraph examination that defendant had not requested counsel. As a general rule, when reviewing a trial court's ruling, an appellate court must examine the entire record and draw its own conclusions. *People v Joyner, supra.* However, if there is conflicting evidence and the determination of voluntariness is largely dependent on the credibility of witnesses, the appellate court should defer to the trial court's findings. *Id.*

In *Joyner,* the police officers testified that the defendant had been fully advised of his *Miranda* rights, had received adequate food and sleep and had not been threatened or physically abused. It

was the defendant's claim, however, that his statement was made as the result of threats made to him regarding his girlfriend. Presented with a conflicting record, the trial judge viewed the video tape made of the defendant's confession, and, from the relaxed demeanor of defendant exhibited on the tape, the judge concluded that the confession was voluntary. *Id.,* p 559. This Court upheld the trial court's determination of voluntariness on that basis.

In the instant case, the trial court listened to defendant's tape-recorded confession. In a section of the tape prior to defendant's actual confession, Detective Boggs instructed defendant as to his *Miranda* rights. Boggs dwelled on the fact that defendant had the right not to be questioned without his consent in the absence of an attorney. He also explained in intricate detail that if defendant could not afford an attorney one would be appointed for him. Defendant acknowledged that he understood his rights and that he still wanted to make the statement. In making its ruling, the trial court noted that defendant had been advised of his *Miranda* rights at least three different times over a period of 3-1/2 hours. The court also made reference to the fact that all of the officers stated that they had not at any time heard defendant ask for an attorney. In making its final ruling the court stated, "I'm satisfied not by a preponderance of the evidence, but beyond a reasonable doubt that the statement was voluntarily given and is admissible in evidence".

*Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981), held that once a defendant has exercised his right to counsel, all questions must cease until counsel is present unless defendant unequivocally asks to speak to the police and

specifically states that he no longer desires the assistance of counsel. It is clear from *Edwards* that before such a per se rule can be invoked there must first be a finding that defendant exercised his right to counsel. Since there is adequate evidence in the record to support the trial court's finding that defendant did not invoke the right to counsel, the only issues are whether the police violated the defendant's right to remain silent and whether the statements made by defendant were voluntary. Since we hold that defendant's right to remain silent was not violated and that there was adequate evidence to support a finding by the trial court that the incriminating statements were voluntary, the convictions of second-degree murder and arson are affirmed.

Affirmed.