PEOPLE v HARDY

Docket No. 75214. Submitted March 13, 1985, at Lansing. Decided May 19, 1986.

Defendant, Duane Hardy, was convicted following a jury trial in Oakland Circuit Court of two counts of armed robbery. The trial court, Francis X. O'Brien, J., sentenced defendant to concurrent prison terms of from fifteen to fifty years on the convictions. Defendant appeals, alleging error in the admission in evidence of two incriminating statements which the defendant gave to the police on March 8, 1982, and May 20, 1982. *Held:*

1. The trial court did not err in finding that defendant did not request the presence of an attorney and knowingly, voluntarily and understandably waived his right to counsel in regard to the March 8, 1982, confession. The defendant's March 8, 1982, confession was properly admitted at trial.

2. The trial court properly determined that the May 20, 1982, confession was not involuntary and was thus admissible. No physical compulsion was imposed by the police upon defendant's desire to speak. Defendant was not in any way fearful of the police officers who questioned him and knew that he could stop the questioning at any time. The inducements offered by the officers did not overcome the defendant's ability to make a voluntary decision to make the statement.

Affirmed.

C. JOBES, J., agreed with the majority that defendant did not request the presence of an attorney prior to his March 8, 1982, confession, that defendant knowingly, voluntarily and understandably waived his right to counsel in regard to that confession, and that the March 8, 1982, confession was properly admitted at defendant's trial. However, she disagrees with the

REFERENCES

Am Jur 2d, Evidence §§ 526-554, 555 *et seq.*

Necessity that Miranda warnings include express reference to right to have attorney present during interrogation. 77 ALR Fed 123.

Admissibility of party's own statement under Rule 801(d)(2)(A) of the Federal Rules of Evidence. 48 ALR Fed 922.

Necessity of informing suspect of rights under privilege against self-incrimination prior to police interrogation. 10 ALR3d 1054.

majority in regard to its decision that a mistake was not committed by the trial court in its finding of voluntariness in regard to the May 20, 1982, confession. She would conclude that the inducements offered by the police officers overcame defendant's ability to make a voluntary statement. She believes that such error was not harmless and that, although evidence of defendant's guilt was very strong, the confession might well have convinced an otherwise undecided juror of defendant's guilt beyond a reasonable doubt. She would reverse and remand for a new trial.

### OPINION OF THE COURT

1. CRIMINAL LAW — CONFESSIONS — EVIDENCE — APPEAL.

The totality of the circumstances are examined by the Court of Appeals in determining whether a trial court erred in holding that a defendant's confession was made voluntarily; a determination that a confession was voluntary may be upheld where, after considering all the relevant factors, the Court of Appeals agrees with the trial court's finding that the inducements offered to the defendant did not overcome the defendant's ability to make a voluntary decision to make a statement.

### DISSENT BY C. JOBES, J.

2. CRIMINAL LAW — CONFESSIONS — EVIDENCE — APPEAL.

*The Court of Appeals will examine the entire record and reach an independent determination of voluntariness when reviewing a trial court's ruling on the admissibility of a confession; the trial court's decision will be affirmed absent a definite and firm conviction that the trial court erred.*

3. CRIMINAL LAW — CONFESSIONS — EVIDENCE — APPEAL.

*The Court of Appeals should defer to the trial court's findings regarding the voluntariness of a defendant's confession where the determination of voluntariness is largely dependent on the credibility of witnesses.*

4. CRIMINAL LAW — CUSTODIAL INTERROGATIONS — PRESENCE OF COUNSEL — CONSTITUTIONAL LAW.

*An accused has the right to the presence of counsel during a custodial interrogation to protect his right against self-incrimination; once an accused requests counsel, the police must refrain from further interrogation until counsel is made available or the accused initiates further communication with the police (US Const, Am V).*

5. CRIMINAL LAW — CONFESSIONS — EVIDENCE — PRESENCE OF COUN-
   SEL — WAIVER.

   *It must be found that the accused knowingly, voluntarily, and
   understandably waived his right to counsel before a confession
   taken in the absence of counsel may be admitted as evidence
   against the accused.*

6. CRIMINAL LAW — CONFESSIONS — EVIDENCE — VOLUNTARINESS —
   TOTALITY OF CIRCUMSTANCES TEST.

   *The totality of the circumstances test for determining the volun-
   tariness of a defendant's confession requires the consideration
   of a multiplicity of factors including: (a) the nature of the
   inducement, (b) the length and conditions of detention, (c) the
   physical and mental state of the defendant including his age,
   mentality, and prior criminal experience, (d) the conduct of the
   police, and (e) the adequacy and frequency of advice of rights;
   the burden is on the prosecution in all such cases to demon-
   strate voluntariness by a preponderance of the evidence.*

7. CRIMINAL LAW — APPEAL — HARMLESS ERROR.

   *Appropriate considerations in determining whether an error may
   be determined to be harmless are: (1) was the error so offensive
   to the maintenance of a sound judicial process that it could
   never be regarded as harmless, and (2) if not so basic, was the
   error harmless beyond a reasonable doubt; the second inquiry
   focuses on whether the error might have aided in convincing
   an otherwise undecided juror of defendant's guilt beyond a
   reasonable doubt.*

8. CRIMINAL LAW — APPEAL — HARMLESS ERROR — FUNDAMENTAL
   RIGHTS.

   *The harmless error doctrine does not apply under circumstances
   involving the violation of a fundamental right guaranteed by
   the United States and Michigan Constitutions.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *L. Brooks Patterson,*
Prosecuting Attorney, *Robert C. Williams,* Chief
Appellate Counsel, and *John L. Kroneman,* Assis-
tant Prosecuting Attorney, for the people.

*James A. Carlin,* for defendant on appeal.

Before: SHEPHERD, P.J., and V. J. BRENNAN and C. JOBES,* JJ.

V. J. BRENNAN, J. We adopt the facts as set forth in Judge JOBES's dissenting opinion and we adopt the portions of her opinion holding that the trial court correctly found that defendant did not request the presence of an attorney, that the trial court did not err in finding that defendant knowingly, voluntarily and understandably waived his right to counsel and that defendant's March 8, 1982, confession was properly admitted at trial.

However, we depart from Judge JOBE's conclusion that the May 20, 1982, confession was inadmissible. In our opinion, the confession was admissible. The interruptions made by the defendant clearly show that no physical compulsion was imposed by the police upon defendant's desire to speak. Also, defendant's strong assertions and replies show that he was not in any way fearful of the officers. In fact, his responses show that he could have stopped making the statement at any time.

The record overwhelmingly shows that there is no mistake about the fact that he committed the crimes.

We find that the May 20, 1982, confession was not involuntary. *People v Conte,* 421 Mich 704; 365 NW2d 648 (1984), holds that we must examine the totality of the circumstances. Here we have two confessions. We have the tapes revealing no fear of physical abuse by the officers on defendant's part as well as an indication that he felt and knew that he could stop making the statement at any time. Further, we have the trial court's clear observations of the officers' and the defendant's demeanor and credibility.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

We find, after considering all the relevant factors, that the inducements offered did not overcome the defendant's ability to make a voluntary decision to make a statement. The trial court did not err in so finding.

Convictions affirmed.

SHEPHERD, P.J., concurred.

C. JOBES, J. *(dissenting).* Defendant was convicted by a jury of two counts of armed robbery, MCL 750.529; MSA 28.797. Defendant was sentenced to concurrent prison terms of from fifteen to fifty years. Defendant appeals as of right arguing that his conviction should be reversed because two incriminating statements which he gave to the police were erroneously admitted at his trial. The majority and I agree that the statement defendant made on March 8, 1982, was properly admitted at defendant's trial. I believe, however, that defendant's May 20, 1982, statement was involuntary and inadmissible. Since I cannot conclude that the admission of the statement was harmless beyond a reasonable doubt, I respectfully dissent.

On January 30, 1982, the members of the Rose family were held in their home for from four to five hours by three men armed with a gun and a knife. The robbers vandalized the house and took numerous items including jewelry, furs, cash, and two automobiles. The three members of the family were tied up, moved from room to room with bags over their heads, and physically and verbally abused by the robbers who demanded valuables and cash. Two of the robbers raped Mrs. Rose. At trial, she identified defendant as the third robber.

Prior to trial, defendant moved to suppress two confessions he made to the police. The first was

made on March 8, 1982. At the *Walker*[1] hearing, Pontiac Police Officer Philip Van Houten testified that defendant was brought to the Bloomfield Township Police Station sometime between 12:30 A.M. and 2:30 A.M. on March 8, 1982. Defendant was brought to the station on a search warrant for hair and fluid samples. At the time, Officer Van Houten and Officer Hawks were part of a task force working with the Michigan State Police and the Bloomfield Township Police investigating a series of robbery-rape crimes that had occurred in the area of Bloomfield Township and the City of Pontiac.

Officer Van Houten first had contact with defendant at approximately 4:30 A.M. Prior to questioning defendant, Officer Hawks read defendant his *Miranda*[2] rights and asked defendant if he wanted to talk with a lawyer before they asked him any questions. The defendant said that he did not want to talk with a lawyer. Defendant began to give the statement and then said he wanted some more time to think. Defendant was placed in a detention cell until approximately 6:30 A.M., when he told Officer Hawks he was ready to talk. Officer Hawks transcribed defendant's confession in defendant's presence and defendant signed it. Officer Van Houten witnessed defendant's signing of the statement.

Officer Hawks' testimony was essentially the same. He also testified that at approximately 6:30 A.M. he went to defendant's cell to tell him that he was leaving, and that defendant indicated that he wanted to talk. Before he began questioning defendant, Hawks reminded defendant that he still had

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

the same rights and defendant indicated that he
still wanted to talk without an attorney present.
Since defendant said that he could not read or
write, Hawks wrote down defendant's answers to
his questions. After he had finished questioning
defendant, Hawks read the confession to defen-
dant. Defendant declined to make any additions to
the confession. He then signed the confession in
Hawks' and Van Houten's presence. Hawks testi-
fied that he made it very clear to defendant that
he could not promise anything in exchange for his
confession. He did tell defendant, however, that he
would make the prosecutor aware of defendant's
cooperation.

Defendant testified that when he arrived at the
Bloomfield Township police station on March 8,
1982, he was taken to a room and questioned by
several police officers about a number of crimes.
Defendant testified that he asked for an attorney
in response to one of the officers' statement that
he had the right to the presence of an attorney.
Despite his request, the defendant stated that the
police continued to "pester him" concerning the
Rose robbery and several other crimes. Defendant
stated that he was told that rapists were beaten in
prison and that he was never going to see the light
of day again. After approximately one hour, defen-
dant was led to a detention cell. Sometime later,
Officer Hawks came in and continued questioning
him. Defendant testified that he talked to Officer
Hawks because he was afraid the police would not
let him go unless he said something to them. At
the *Walker* hearing, it was determined that defen-
dant's ability to read was limited and he stated
that he did not understand what waiving or giving
up rights meant. When shown a copy of the confes-
sion, defendant said that the signature did not

look like his. Nor could he remember signing the statement.

The trial court found that defendant knowingly, voluntarily, and understandingly waived his *Miranda* rights prior to making his statement. On appeal, defendant argues that his March 8, 1982, confession was obtained in violation of his Fifth Amendment right to counsel.

When reviewing a trial court's ruling on the admissibility of a confession, this Court should examine the entire record and reach an independent determination of voluntariness. However, absent a definite and firm conviction that the trial court erred, the trial court's decision should be affirmed. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974). Where the determination of voluntariness is largely dependent on the credibility of the witnesses, this Court should defer to the trial court's findings. *People v Catey,* 135 Mich App 714, 721; 356 NW2d 241 (1984), lv den 422 Mich 937 (1985). In the present case, the issue of the voluntariness of defendant's March 8, 1982, confession was largely a question of witness credibility, and the trial court was in a better position to make a determination of credibility. *People v Oliver,* 111 Mich App 734, 751; 314 NW2d 740 (1981), lv den 414 Mich 970 (1982); *People v Willett,* 110 Mich App 337, 345; 313 NW2d 117 (1981), remanded on other grounds 414 Mich 970 (1982).

In *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the Supreme Court ruled that an accused has a right to the presence of counsel during a custodial interrogation in order to protect the accused's Fifth Amendment right against compulsory self-incrimination. Once an accused requests the presence of counsel, the police must refrain from further interrogation until counsel is made available or the accused initiates

further communication with the police. *Edwards v Arizona,* 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981); *People v Paintman,* 412 Mich 518, 526; 315 NW2d 418 (1982), cert den 456 US 995; 102 S Ct 2280; 73 L Ed 2d 1292 (1982). Before a confession taken in the absence of counsel may be admitted as evidence against the accused, it must be found that the accused knowingly, voluntarily, and understandably waived his or her right to counsel. *Edwards,* 451 US 483-484.

Defendant does not dispute that he was told that he had a right to remain silent and to the presence of an attorney. Defendant's claim that he requested an attorney was in direct conflict with the police officers' testimony that defendant agreed to talk without an attorney present. As the trial court was in a better position to judge the credibility of their testimony, I believe that the trial court's finding that defendant did not request the presence of an attorney should be affirmed.

I also do not believe that the trial court erred in finding that defendant knowingly, voluntarily, and understandably waived his right to counsel. Defendant asserts that the record shows that he had difficulty reading and little experience with the criminal system. However, the other evidence in the record leaves me with the impression that defendant was capable of understanding that he had the right to the presence of an attorney before speaking to the police. Accordingly, I find that defendant's March 8, 1982, confession was properly admitted at defendant's trial.[3]

---

[3] Defendant additionally argues that MRE 410 barred the use of his March 8, 1982, confession. In *People v Conte,* 421 Mich 704; 365 NW2d 648 (1984), the application of MRE 410 was discussed by both Justice BOYLE and Justice CAVANAGH; however, the test for admissibility under MRE 410 is still unclear. We find that MRE 410 did not bar admission of defendant's March 8, 1982, confession because there is no evidence that it was made in connection with an offer or

Defendant additionally contends that he is entitled to a new trial at which his May 20, 1982, confession is suppressed because it allegedly was induced by promises of leniency. At the *Walker* hearing, Bloomfield Township Police Officer Dan DeWolf testified that he had visited defendant's home on several occasions prior to defendant's May 20, 1982, arrest, in an attempt to convince defendant's family that defendant should give himself up to the police. On the day defendant was arrested, DeWolf allegedly advised defendant's family that the prosecutor might consider dropping some of the charges pending against defendant. DeWolf admitted that he mentioned the possibility that defendant might only receive probation. However, he claimed that he advised defendant's family that defendant could also receive up to life imprisonment. He also told them that the police would not oppose a low bond. After a discussion that lasted several hours, defendant's mother agreed to call defendant on the telephone. She spoke with him for approximately thirty-five minutes before handing the telephone to DeWolf. DeWolf told defendant to turn himself in because he had a chance to help himself and he would rather see defendant as a witness than a defendant. Defendant agreed to meet DeWolf on a street corner.

Defendant testified that Officer DeWolf told him that he had been accused of committing criminal sexual conduct and armed robbery. DeWolf asked him if he wanted to come to the police station to make a statement and clear himself. DeWolf also wanted him to testify against the other two robbers. Defendant testified that he was promised "no time" and probation if he testified against the

attempt to plead guilty, *Conte, supra,* p 758 (opinion of Boyle, J.), or in connection with a "charge" bargain, *Conte, supra,* p 763 (opinion of Cavanagh, J.).

other two individuals. Sandra Love, defendant's sister, Marvin Lee Thompson, a friend of the family, Shawanda Scott, defendant's sister-in-law, Hubert Hardy, defendant's brother, and Mildred Munson, defendant's mother, testified that Officer DeWolf promised them that defendant would not spend any time in jail if he turned himself in to the police. They also testified that the police officers told them that they only wanted to talk to defendant and did not tell them that there was a warrant for defendant's arrest.

Bloomfield Township Police Officer James Keller testified that defendant was arrested in connection with the Rose robbery at approximately 6:30 P.M. on May 20, 1982. He and DeWolf discussed several other crimes with defendant. Defendant denied any knowledge of the other crimes, but agreed to talk about the Rose robbery. At approximately 10:10 P.M., defendant confessed. According to Keller, defendant was informed that no promises could be made. However, Keller did tell defendant that if he made a statement they would take the tape to the prosecutor's office and inform the prosecutor of defendant's cooperation. Keller also informed the defendant that if defendant agreed to testify against the other two individuals there could be a reduction in his charges before trial and the police would not oppose a low bond. Keller also testified that defendant wanted to testify against the other two individuals for "his own reasons."

The tape-recorded statement which was taken from defendant was transcribed. At the beginning of the recording, Officer Keller read defendant his rights. Thereafter, the following exchange took place:

> *Lieut. Keller:* I've got this dated and time ah 5-20-of 1982, 10:10 P.M., and if you'll sign where the "X" is there? Here's a pen.

*Duane:* (unclear)

*Lieut. Keller:* Now, sign that . . . if you'll sign that there and then I'll ask you questions . . . (unclear) I'm gonna ask you questions about one particular incident that happened here in Bloomfield.

*Duane:* (unclear). No man, hu . . . uh . . . this say no promises . . . no promises or threats have been made to me.

*Lieut. Keller:* Right.

*Duane:* Promises—you ain't promisin' me nothin' man . . . that's why I wanna know, I wanna, I wanna know, I want you to promise me, no promises . . . I want that to be yes promises have been made to me.

*Det. DeWolf:* Okay, the promise that we have made to you which . . .

*Duane:* That's what, that's what . . . that's the only thing I'm talking about.

*Det. DeWolf:* Okay . . .

*Lieut. Keller:* Let him finish "cause this is going on the tape—let him finish."

*Det. DeWolf:* . . . we'll clarify that . . . the promise that we have made to you is that this tape will be taken to the prosecutor's office tomorrow morning so that he will learn from your statements today that you want to ah testify against the two other people involved in the Robbery/Rape ah involved in this complaint and that ah providing that you do testify against those two people that a future arrangement will be made with you, your attorney, and the prosecutor's office for a result of your case. That's what this tape is for. Is that clear?

At another point during the statement, the following exchange occurred:

*Lieut. Keller:* Okay, so what cars ah . . . what kind of cars did you leave in?

*Duane:* About a deal . . . talk about the deal

. . . what about the deal . . . talk, talk about the deal.

*Lieut. Keller:* We're talking about your statement now ya know we got the thing on there—what we're gonna do here, what we're gonna do with this tape recorder?

*Duane:* Yeah, whatcha gonna do with the tape recorder after . . .

*Lieut. Keller:* Take it to the prosecutor's office tomorrow morning and tell him that you wanna cooperate and that you wanna testify against the two other individuals that were with you. Isn't that true? Isn't that what we already told you what we were gonna do?

*Duane:* Yeah, about my time.

*Lieut. Keller:* And see how your case can be worked out that you'll testify against the two of 'em and possibly get a reduction on your original charges. Isn't that what I told you we were gonna do? Right?

*Duane:* Yeah.

*Lieut. Keller:* Okay, so now I wannt [sic] talk about the incident now.

*Det. DeWolf:* And we have to have the truth.

The trial court held that promises made by law enforcement officials do not make subsequent statements given in reliance on those promises per se inadmissible. The court found that promises were made to defendant but that they did not relate to refusing to use the incriminating statements against him at his trial. Rather, the promises related to his testimony against the other two individuals involved in the armed robbery. Therefore, the court concluded that the tape-recorded statement was voluntary and admissible.

In *People v Conte,* 421 Mich 704; 365 NW2d 648 (1984), the Supreme Court's most recent discussion of confessions induced by promises of leniency, four Justices agreed on the following test:

The totality of circumstances test for voluntariness requires consideration of a multiplicity of factors, including, but not limited to, the nature of the inducement, . . . the length and conditions of detention, . . . the physical and mental state of the defendant (including his age, mentality, and prior criminal experience), . . . the conduct of the police, . . . and the adequacy and frequency of advice of rights, . . . .

If, after considering all relevant factors, the court concludes that the inducements offered did not overcome the defendant's ability to make a voluntary decision to make a statement, the statement(s) will be admissible. In all such cases, the burden is on the people to demonstrate voluntariness by a preponderance of the evidence, . . . . [421 Mich 754-755 (opinion of Boyle, J.). Citations omitted.]

Under the above-stated test, my independent review of the record leaves me with a definite and firm conviction that a mistake was committed by the trial court in his finding of voluntariness. *People v McGillen #1, supra.*

Officer DeWolf talked with defendant on the telephone for approximately one-half hour prior to defendant's arrest. Defendant was then detained and questioned for 3½ hours between his arrest and confession. Defendant and his family members were repeatedly assured that some kind of arrangement would be made regarding the charges against defendant or the amount of time he would spend in jail. Defendant's limited experience makes it unlikely that he would know the limits of the police officers' authority to negotiate such a deal.

I do not find Officer Keller's testimony, that all promises made to defendant related only to his testimony against the other two individuals, particularly credible in light of Keller's additional

testimony that defendant wanted to testify against
the other two individuals for his own reasons.
Moreover, it is clear that the same promises which
induced defendant to agree to testify against the
other individuals also induced defendant to make
a statement which was subsequently used against
him at his trial. Defendant interrupted the tape
recording of his confession on two occasions in
order to clarify the promise that an arrangement
would be worked out concerning his charges.
There is no doubt that defendant expected to
negotiate in exchange for his confession.

I do not accept the majority's theory that, be-
cause there was no showing that defendant was in
fear of physical abuse and the evidence of defen-
dant's guilt was very strong we can conclude that
his confession was voluntary. The test is whether
the totality of the circumstances shows that the
inducements offered by the police overcame defen-
dant's ability to make a voluntary decision to
make a statement. Defendant's statements during
the confession show that he clearly expected that
the charges against him would be reduced. Consid-
ering defendant's age, inexperience, limited under-
standing of his rights, and the numerous promises
and assurances made to defendant and his family,
I conclude that the inducements offered by the
police overcame defendant's ability to make a
voluntary statement.

The remaining question is whether the admis-
sion of defendant's statement at trial may be
considered harmless, i.e., was the error so offensive
to the maintenance of a sound judicial process that
it could never be regarded as harmless, and, if not
so basic, was the error harmless beyond a reason-
able doubt? *People v Robinson,* 386 Mich 551, 563;
194 NW2d 709 (1972).

I am unable to conclude that the error was

harmless in this case. An involuntary confession is inadmissible under both the state and federal constitutions on the ground that such admission would violate a defendant's due process right to a fundamentally fair trial and his self-incrimination right against compelled testimonial disclosure. *Conte, supra*, p 724 (opinion of WILLIAMS, C.J.). In *Rogers v Richmond*, 365 US 534; 81 S Ct 735; 5 L Ed 2d 760 (1961), the Supreme Court explained the reason that involuntary confessions are not admissible evidence:

> Our decisions under [the Fourteenth] Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, *i.e.,* the product of coercion, either physical or psychological cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth. [365 US 540-541. Citations omitted.]

Thus, the rule against the use of involuntary confessions in a criminal prosecution is a fundamental right guaranteed by the state and federal constitutions. The harmless error doctrine does not apply under these circumstances. *Lynumn v Illinois,* 372 US 528, 537; 83 S Ct 917; 9 L Ed 2d 922 (1963). Moreover, although evidence of defendant's guilt was very strong in this case, the confession might well have convinced an otherwise undecided juror of defendant's guilt beyond a reasonable doubt. *People v Prast (On Rehearing),* 114 Mich App 469, 489; 319 NW2d 627 (1982). I would

reverse defendant's convictions and remand for a new trial.