# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CURTIS COLEMAN GLASPIE, a/k/a, CURTIS
ALLEN GLASPIE,

       Defendant-Appellant.

UNPUBLISHED
June 18, 2015

No. 320377
Eaton Circuit Court
LC No. 13-020063-FC

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and resisting and obstructing a police officer, MCL 750.81d(1). Defendant was sentenced to concurrent prison terms of 25 to 40 years for armed robbery, 2 to 4 years for resisting and obstructing, and a consecutive sentence of 2 years for felony-firearm. We affirm.

## I. FACTUAL BACKGROUND

Defendant and two other men robbed a gas station in Delta Township on November 20, 2012. Defendant forced the gas station clerk, at gunpoint, to open the register. Although the robbers took the money and lottery tickets, the clerk was able to press the emergency button to alert the police.

Defendant and his companions fled the scene and eventually got into a taxicab. A police chase ensued, and the cab pulled over to the side of the road. The three men exited the cab and fled on foot. Officer Michael Schulte pursued defendant. After a brief altercation, Schulte tasered defendant twice and took him into custody. Lottery tickets matching those taken from the gas station were found in the cab. Surveillance video of the robbery was admitted at trial.

During the unrecorded portion of defendant's police interview, he confessed that he was one of the men who robbed the gas station. At trial, however, defendant denied that such a conversation took place. A recorded jail phone conversation also was admitted, wherein defendant confessed that he robbed a gas station but also stated that it was not really him. Defendant was convicted of armed robbery, felony-firearm, and resisting and obstructing. He now appeals on several grounds.

-1-

## II. CONFESSION

## A. STANDARD OF REVIEW

Defendant first contends that the trial court erred in admitting his confession at trial. He posits that he did not waive his right to remain silent and that his confession was not the result of a voluntary, knowing, and intelligent waiver. We review *de novo* the entire record to determine whether an accused has waived his Fifth Amendment rights. *People v Cheatham*, 453 Mich 1, 30; 551 NW2d 355 (1996). "Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment." *Id.* We will not disturb the trial court's factual findings unless they are clearly erroneous. *Id.* "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake was made." *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003).

## B. PROCEEDINGS BELOW

After defendant was arrested, he was informed of his *Miranda*[1] rights before the police interview began. The following conversation ensued:

> *Detective*: All right. All right, I want to go over this with you okay. Ah, you have the right to remain silent. You understand that?

> *Defendant*: Mmm, hmm.

> *Detective*: Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with while [sic] you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you at county expense before any questioning if you wish. If you give up your right to remain silent and later wish to stop answering questions, no further questions will be asked. Do you understand all of those?

> *Defendant*: Mmm, hmm.

> *Detective*: Okay, you will to waive those rights and talk with us?

> *Defendant*: What you mean [sic] waive those rights?

> *Detective*: Are you willing to waive your *Miranda* Rights that I just read to ya, and, and talk with us?

> *Defendant*: About what, man?

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Detective*:  Well, that's what we're gonna get into and that's one of the things with your rights is, you know, you can stop talking, you know, we can kinda over [sic] some things . . .

*Defendant*:  All I wanna is, I wanna know what's really going on man.

*Detective*:  Okay.  But first we need to hear from you.  Are you willing to talk with us?  You want to know what's going on, so are you willing to talk with us?

*Defendant*:  If I can help, I will.

*Detective*:  All right.  All right, I just need you to sign here on this form that says signature.  That's just that I read these.  That you understand them, and you said you are willing to talk with us.

*Defendant*:  I don't know what to talk about, but I guess.  I don't know what we talking about.

*Detective*:  Okay.

*Defendant*:  I don't wanna waive my rights though.

*Detective*:  You willing to talk with us?  Are you willing to talk with us?  It says right there one of the rights is if, if you give up your right to remain silent and later wish to stop answering questions, no further questions will be asked.  So if you wanna, you say you wanna talk to us, you wanna talk to us . . .

*Defendant*:  I wanna see, I wanna see if I can help you man


## C.  WAIVER

"Statements of an accused made during a custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives that Fifth Amendment right." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).  The waiver must " 'have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " *People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000), quoting *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986).  See also *People v Gipson*, 287 Mich App 261, 264-265; 787 NW2d 126 (2010).  Further, " 'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Daoud*, 462 Mich at 633, quoting *Moran*, 475 US at 421.  See also *Gipson*, 287 Mich App at 264-265.  Thus, "[w]hether a statement was voluntary is determined by examining police conduct, but the determination whether it was made knowingly and intelligently depends, in part, on the defendant's capacity." *Tierney*, 266 Mich App at 707.

Here, the detective read defendant his *Miranda* rights and defendant verbally acknowledged that he understood them. He signed a written waiver. However, defendant then commented that he did not know what to talk about, and stated, "I don't wanna waive my rights though." On appeal, defendant contends that this was a clear expression that he was not waiving his rights, and that by continuing to talk with the police he merely thought he was helping. Defendant asserts that he unequivocally asserted his right to remain silent.

As defendant recognizes, the assertion of the right to remain silent "must be unequivocal." *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014). Defendant's statements in this case were not unequivocal, as they were not without ambiguity. See, e.g. *Henry (After Remand)*, 305 Mich App at 147-148 (when a defendant replies, "No, sir" when asked if he wanted to waive his rights, that was an unambiguous assertion of the right to remain silent). Here, defendant's specific statement was that he did not "wanna waive [his] rights *though*." Defendant's use of the word "though" qualifies the assertion of the right, rendering it equivocal. "Though" is defined as "however" or "nevertheless." *Merriam-Webster's Collegiate Dictionary* (2014).

After defendant stated that he did not want to waive his rights "though," the detective sought clarification by asking if defendant wished to speak with them and reminding him that he could stop the questioning. See *People v Catey*, 135 Mich App 714, 726; 356 NW2d 241 (1984) ("Once a defendant chooses to remain silent, the police are permitted to seek a clarification of an equivocal exercise of that right."). Defendant then replied, "I wanna see, I wanna see if I can help you man." This is an expression of his willingness to speak with the police. In other words, it is the opposite of an unequivocal assertion of the right to remain silent. See *People v McKinney*, 488 Mich 1054; 794 NW2d 614 (2011) (a defendant's statement that he would "just as soon wait" until he had an attorney before talking to the police, then the officer's response, and the defendant's immediate statement that he "was willing to discuss the 'circumstances,' was not an unequivocal assertion of the right to counsel or a statement declaring an intention to remain silent.").

Defendant also contends that his waiver was not knowing, voluntary, or intelligent. He highlights facts such as he only completed the eighth grade, his prior experience with the criminal justice system was primarily with misdemeanors, he was institutionalized for five years "in what he believed was a mental health facility," and he had been physically injured prior to giving his statement and required hospitalization.

However, the trial court's findings weigh heavily against these arguments. The trial court found that, despite defendant's claim that he had an eighth grade education and suffered from mental disorders, his understanding of the legal system and *Miranda* warnings was "sophisticated" and he had demonstrated "full awareness of the legal system and his rights." The trial court noted that defendant had sent the court two letters, which "showed a great deal of

sophistication regarding the law."[2]  The court also observed that defendant had been arrested previously, and his claim that he had not been read his *Miranda* rights for those crimes was unfathomable.

As the trial court found, defendant was 25 years old when questioned, and the length of the interview was not unreasonable.[3]  Nor did the trial court find any evidence that defendant was injured, drugged, or intoxicated when he gave his statement, or that he was deprived of food, sleep, or water.  The trial court also found that there was no evidence or allegations of threats or physical abuse.

We discern no clear error in the trial court's findings or its overall conclusion that defendant's waiver was voluntary, knowing, and intelligent.

## D.  HARMLESS ERROR

Moreover, even if the admission of defendant's statement was improper, "given the untainted evidence in this particular case, admission of the statements was harmless beyond a reasonable doubt."  *Henry (After Remand)*, 305 Mich App at 148.  This is not a case with little evidence, nor one that was a credibility contest between two witnesses.  Instead, the jury had significant, untainted evidence of defendant's guilt.  First, the surveillance video of the robbery was admitted at trial.  Therefore, the jury was able to judge for itself whether defendant was one of the perpetrators.  Several police officers also detailed the frenzied chase that ensued, which included following the suspects in a cab and pursuing them when they fled.  A police officer continued to chase defendant until he had to be tasered twice to be subdued before he was arrested.  The stolen lottery tickets were recovered from the cab.  Additionally, evidence was admitted that defendant made a phone call from jail to a woman, where he said, "I f***** up.  I f***** up really bad."  When the woman asked him what he did, he replied "I robbed a gas station."  She then repeated, "You robbed a gas station?"  Defendant replied, "Yeah."  When she asked him why he did it, he explained that he was not really the one who robbed the gas station.

In light of the overwhelming evidence of defendant's guilt, "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *Henry (After Remand)*, 305 Mich App at 151 (quotation marks and citation omitted).

## III.  JURY

Defendant next contends that there was a possible improper, outside influence on the jury, which warrants a remand.  We disagree.

---

[2] The trial court also found that defendant, after realizing the level of sophistication his letters revealed, provided testimony that someone else wrote them, which the court found was not credible.

[3] Although the trial court did not account for the period of the interview that was unrecorded, the overall length of the detention remained reasonable.

During trial, the prosecutor informed the court that when leaving the courtroom one day, a colleague inquired about a particular witness's testimony. The prosecutor stated that she did not respond, although she might have made a gesture indicating that she could not discuss it. One of the jurors passed by during this conversation. When the issue was brought to defense counsel's attention, he agreed with the prosecution and the trial court that the incident did not create a problem for defendant.

In light of the foregoing, we find that this issue is waived. Because of defendant's affirmative agreement with the prosecution, and his express approval of the trial court's course of action, "defendant has waived this issue on appeal." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Moreover, even if we were to review this issue, defendant has not demonstrated an entitlement to relief or a hearing on remand.

A jury only may consider the evidence presented to it in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). In order to establish that an extrinsic influence was error requiring reversal, the defendant must prove the following: (1) the jury was exposed to the extraneous influence; and (2) the extraneous influence created a real and substantial possibility that it could have affected the jury's verdict. *Id.* at 88-89. To prove the second prong, the defendant generally must "demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id.* at 89. If the defendant can prove these two prongs, the burden shifts to the prosecution to demonstrate that the error was harmless beyond a reasonable doubt. *Id.* The prosecution may prove this if the extraneous influence was duplicative of evidence at trial, or if the evidence of guilt was overwhelming. *Id.* at 89-90.

Defendant has not demonstrated that the jury was exposed to an extrinsic influence or that anything in the prosecution's conduct would give rise to an improper inference. Even assuming, *arguendo*, that a juror heard the disputed exchange, and communicated it to his or her fellow jurors, defendant fails to explain how this incident could have created a "real and substantial possibility" that it affected the verdict. *Budzyn*, 456 Mich at 88-89. Furthermore, given the overwhelming evidence of defendant's guilt, not the least of which is his confession, any error was harmless beyond a reasonable doubt. *Id.* at 89-90

## IV. OFFENSE VARIABLE (OV) 9

### A. STANDARD OF REVIEW

Lastly, defendant contends that the trial court improperly scored OV 9 at 10 points. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

### B. ANALYSIS

Defendant contends that neither the cab driver nor the police officer who pursued and captured him were victims for purposes of OV 9. Pursuant to MCL 777.39(1)(c), a trial court may score OV 9 at 10 points if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." The trial court is to count each person who was placed in danger of physical injury or loss of life or property as a victim. MCL 777.39(2)(a). "OV 9 is scored only on the basis of the defendant's conduct during the sentencing offense." *People v Carrigan*, 297 Mich App 513, 515; 824 NW2d 283 (2012). "[T]he course of an armed robbery includes the robber's conduct in fleeing the scene of the crime." *People v Mann*, 287 Mich App 283, 287; 786 NW2d 876 (2010).

Neither party disputes that defendant placed at least one victim in danger, namely, the gas station clerk. Defendant and his coperpetrators then fled the scene, and Officer Schulte gave chase. According to Schulte, defendant resisted arrest and had to be tasered two times. Schulte testified that after defendant "squared off" with him, defendant resisted and "rolled into" him when he attempted to handcuff defendant. Thus, Schulte was a victim because this physical altercation placed him in danger of physical injury. MCL 777.39(2)(a). Furthermore, because this conduct comprised part of the armed robbery, *Mann*, 287 Mich App at 287, the trial court properly counted Schulte as another victim.[4]

Because defendant placed at least two victims in danger of physical injury or loss of life, MCL 777.39(2)(a), the trial court properly scored OV 9 at 10 points.[5]

## V. CONCLUSION

There is no error warranting reversal regarding the admission of defendant's confession. Nor do we find that a remand is warranted based on a potential extraneous influence on the jury. Lastly, resentencing is not required because the trial court properly scored OV 9. We affirm.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering

---

[4] Although this conduct also comprised the resisting and obstructing charge, that does not warrant a different result. See, e.g., *Mann*, 287 Mich App at 287 ("the carjacking incident constituted not only the commission of separate offenses, but was also a continuation of the armed robbery.").

[5] Since this accounts for at least two victims, it is unnecessary to address defendant's arguments regarding the taxicab driver.