PEOPLE v ANTHONY ESPINOSA

PEOPLE v DONALD ESPINOSA

Docket Nos. 75945, 77495. Submitted January 23, 1985, at Lansing.—
Decided April 16, 1985. Leave to appeal applied for.

Anthony J. Espinosa and his brother, Donald R. Espinosa, were both convicted of second-degree murder and felony-firearm in a joint trial before a jury in Saginaw Circuit Court and were sentenced, Fred J. Borchard, J. In addition, Anthony Espinosa was also convicted at that trial of carrying a concealed weapon and was sentenced on that conviction. The defendants filed separate appeals, which have been consolidated. *Held:*

1. The trial court abused its discretion by denying defendants' motions for separate trials. The defendants' defenses were antagonistic, pitting each against the other. The prosecutor's argument that, by proceeding against each defendant on an accessory theory, he destroyed the inconsistency in the defendants' theories is rejected. While the prosecutor's strategy would not be improper if the defendants were tried separately, that strategy cannot be employed as a cover for the prejudicial effect of an improper joinder.

2. There was sufficient evidence to convict Anthony Espinosa of carrying a concealed weapon.

3. The trial court properly denied Donald Espinosa's motion for a directed verdict.

Reversed and remanded as to each defendant for separate trials on the charges of second-degree murder and felony-firearm. Anthony Espinosa's conviction of carrying a concealed weapon is affirmed.

1. CRIMINAL LAW — TRIAL — JOINDER.

The decision whether to hold a joint trial is a matter within the trial court's discretion (MCL 768.5; MSA 28.1028).

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 21 Am Jur 2d, Criminal Law § 272.
75 Am Jur 2d, Trial § 17 *et seq.*
[2, 3] Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.

2. CRIMINAL LAW — TRIAL — SEPARATE TRIALS — BURDEN OF PROOF.

   A defendant, when moving for severance, must clearly, affirmatively, and fully show that his substantial rights will be prejudiced by joint trial; severance should be granted where the defendants' separate defenses are antagonistic.

3. CRIMINAL LAW — TRIAL — SEPARATE TRIALS.

   A court, even where the defendants do not directly accuse one another of being the guilty party, should order separate trials if the proofs, combined with the defense theories, pit the defendants against each other.

4. CRIMINAL LAW — TRIAL — SEPARATE TRIALS.

   Any set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another is sufficient to require a separate trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Christopher S. Boyd,* Prosecuting Attorney, and *Annette M. Gray,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *R. Steven Whalen),* for Anthony Espinosa.

*George C. Bush,* for Donald Espinosa.

Before: SHEPHERD, P.J., and D. E. HOLBROOK, JR., and M. F. SAPALA,* JJ.

PER CURIAM. Defendants appeal separately as of right from their jury convictions in a joint trial. The jury convicted each defendant as charged of second-degree murder, MCL 750.317; MSA 28.549, and felony-firearm, MCL 750.227b; MSA 28.424(2). Defendant Anthony Espinosa was also found guilty of carrying a concealed weapon, MCL 750.227; MSA 28.424. The trial court sentenced each defendant to life imprisonment for the murder convictions and the mandatory, consecutive two-year

---

  * Recorder's Court judge, sitting on the Court of Appeals by assignment.

term for felony-firearm. The court sentenced Anthony Espinosa to from three to five years' imprisonment for carrying a concealed weapon. We reverse and remand for a new trial of both defendants on all charges except the carrying a concealed weapon charge against Anthony Espinosa. The trial court abused its discretion by denying defendants' motions for separate trials. Defendant Anthony Espinosa's conviction of carrying a concealed weapon is affirmed.

Initially, defendants (who are brothers) were charged jointly. Defendants moved for separate trials, contending that their defenses would be mutually antagonistic. Counsel for Anthony Espinosa stated by affidavit that a joint trial "would put both defendants in a position of either both having to testify or both refraining from testifying in order to avoid a situation of mutual accusations in front of a jury". Each defense attorney stated that his client denied shooting the decedent and contended that the codefendant was in possession of the gun at the time of the killing. Counsel for Donald Espinosa noted that the witnesses at the preliminary examination differed as to which defendant was the shooter. The trial court granted the motions for serverance.

Thereafter, the people again moved to consolidate the cases on the ground that the prosecution would advance an aiding and abetting theory as to each defendant. According to the prosecutor, it was not important to the people's theory that a determination be made of who fired the fatal shots and, therefore, the defendants' theories were not truly antagonistic. The trial court granted the motion to consolidate and later denied a second defense motion for separate trials. Although neither defendant testified at trial, each defense attorney argued that his client did nothing to cause

the victim's death. Counsel for Donald Espinosa argued as follows:

"If you are convinced beyond a reasonable doubt that Tony Espinosa shot and killed Dennis Napier, name one specific action or words said by Donny Espinosa that convinces you beyond a reasonable doubt that he knew Tony Espinosa was about to commit second-degree murder and that he helped him commit it.

\* \* \*

"Finally, why does Mr. Meter pound on Donny? I'll tell you why he pounds on Donny. The reason is, as I perceive it, is because you are not going to be able to come up with one action or one word that Donny did to help anybody kill Dennis Napier.

"All right? Therefore, if you are convinced that Donny's the one that did the shooting, then Tony falls in place and is convicted, too.

"If, on the other hand, you are convinced that Tony did the shooting, you are not going to convict Donny.

"That's why. So that's why he pounded on him."

The case arose from the shooting of Dennis Napier outside the home of William Clark on December 4, 1982. There had been much drinking and card playing. Among those present were the defendants, Napier, William and Kenneth Clark, Irene Gilyard, Donald Espinosa's wife (Marcia), Kenneth Clark's wife (Deborah), and Michelle La-Fave, an acquaintance of the decedent.

Gilyard testified that a fight erupted between the defendants and Napier. In the midst of the fight, an object fell from Anthony Espinosa's pants. Marcia Espinosa picked up the object and ran into a bedroom. Anthony Espinosa followed her. A short time later, Anthony Espinosa emerged from the bedroom with a gun in his right hand and fired two shots at Napier, who was fleeing from the home. Defendants then ran out

the front door. Outside she saw Donald Espinosa waving the gun at Napier. Donald "asked him did he want some of this". Anthony Espinosa stood nearby and said "shoot the motherfucker". At that point, Gilyard observed the Clarks grab Donald Espinosa. As Gilyard ran away from the fray, she heard shots. The last person she saw holding the gun was Anthony Espinosa.

Michelle LaFave testified that she saw defendants and Napier fighting. Marcia Espinosa ran into the bedroom. Anthony Espinosa followed. Anthony Espinosa came out of the bedroom with a gun in his hand. He had the gun approximately 45 seconds before LaFave heard shots. In addition, LaFave observed Donald Espinosa with the gun about seven seconds after the shots were fired.

Deborah Clark testified that she was exiting from the home with the victim, Napier, when she heard shots. She saw the defendants, Napier, and the Clarks fighting near the side of the home. Donald Espinosa held the gun with both hands, arms extended in the direction of the crowd. A few seconds later, this witness heard shots as she fled the scene.

Kenneth Clark was the sole witness who claims to have seen the fatal shots fired. He testified that Anthony Espinosa followed Napier after he ran from the house. Along the side of the home, Anthony Espinosa took aim and fired two or three shots at Napier. The victim collapsed amid some bushes near a neighboring home. Donald Espinosa then took the gun from the codefendant.

A forensic pathologist found three gunshot wounds on the victim's body. Each wound was inflicted from very close range, *i.e.,* no more than six inches.

Whether to hold separate trials is a matter within the sound discretion of the trial court. MCL

768.5; MSA 28.1028. "When moving for severance, the defendant must clearly, affirmatively, and fully show that his substantial rights will be prejudiced by joint trial." *People v Byrd,* 133 Mich App 767, 776; 350 NW2d 802 (1984), *lv den* 419 Mich 960 (1984). Severance should be granted where the defendants' separate defenses are antagonistic. *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976); *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 145; 324 NW2d 782 (1982). Moreover, even where the defendants do not directly accuse one another of being the guilty party, the court should order separate trials if the proofs, combined with the defense theories, pit the defendants against each other. *Hurst, supra,* p 9. "Any set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another is sufficient to require a separate trial." *Id.,* p 7, citing *People v Braune,* 363 Ill 551; 2 NE2d 839 (1936). As this Court held in *People v Sargent,* 124 Mich App 485, 489; 335 NW2d 13 (1983):

"* * * [W]hile the trial court was correct in determining that this case was not a classic confrontation between two codefendants, each accusing the other, the trial court was made aware of clear inconsistencies in the defenses. Therefore, defendant clearly and affirmatively showed that he was entitled to a separate trial."

In this case, the defendants moved for serverance before trial. Their motions were accompanied by affidavits which specified a key inconsistency in their defenses, namely, that each would accuse the other of causing the victim's death. Although neither defendant testified at trial, the defense attorneys urged the jury to draw mutually antagonistic conclusions from the confused recollections of the various witnesses. Counsel for Anthony Espinosa

urged findings which "tended to inferentially incriminate" the codefendant. 124 Mich App 489. Donald Espinosa advanced a theory which, in large part, based his own exculpation on the supposition that the codefendant was responsible for the victim's demise.

We reject the prosecutor's argument that, by proceeding against each defendant on an accessory theory, he destroyed the clear inconsistency in the defendants' theories. We cannot tell whether the jury concluded that Donald Espinosa fired the fatal shot or Anthony Espinosa did so. In fact, the people did not suggest an answer to this question. The prosecutor stated as follows in his closing argument:

"The point is this, ladies and gentlemen of the jury: theoretically you can go in that jury deliberation room and six of you can say that Donald Espinosa shot the gun outside and six of you can say that Tony Espinosa shot the gun outside. But if you find, as a matter of fact, that each of these defendants, by their words and actions, assisted in directly bringing about this victim's death, then they are both guilty of murder. You do not have to declare in your verdict nor decide unanimously which of these two men fired the three shots outside, if you find that each one of them either spoke words of encouragement or did acts which directly brought about the death of this victim."

We find nothing improper in this strategy as to each individual defendant. So long as the jury is unanimous as to each defendant's guilt, it does not matter that their unanimity masks a hybrid panel, with some members of the view that this or that defendant acted as principal, with other members concluding the same accused aided and abetted the killing. Under Michigan law, there is no distinction. MCL 767.39; MSA 28.979. Nevertheless, the

people's trial strategy cannot be employed as a cover for the prejudicial effect of an improper joinder. In the present case, insofar as one or more jurors found that either defendant acted as the principal, that finding might have resulted from the conflicting nature of the defenses. The prosecutor's task was thereby made easier by the improper joinder. There is no question, however, that the trial strategy and the above-quoted argument of the prosecutor would be permitted in the separate trials of each defendant.

There is a further flaw in the prosecutor's argument. The people seem to assume that a conviction was inevitable on one theory or the other. Such a result is facilitated by the improper joinder. In separate trials the jury might be more inclined to acquit any given defendant on both theories. That is why the law requires separate trials in the face of antagonistic defenses. There is also the increased risk that both defendants might be acquitted on both charges—but that risk is always present in separate trials. If the courts or the Legislature had wanted to totally eliminate that risk they would have totally eliminated the possibility of separate trials.

The remaining issues require little discussion. Contrary to defendant Anthony Espinosa's argument, there was sufficient evidence to convict him of carrying a concealed weapon. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979); *People v Johnnie W Jones,* 12 Mich App 293; 162 NW2d 847 (1968), *lv den* 383 Mich 771 (1970). We trust that, at retrial, the court will instruct the jury on the elements of aiding and abetting the commission of felony-firearm, whether requested by defendant or not. *People v Johnson,* 411 Mich 50; 303 NW2d 442 (1981). The trial court properly denied defendant Donald Espinosa's motion for a directed

verdict. *Hampton, supra; People v Karst,* 138 Mich App 413; 360 NW2d 206 (1984). Finally, our decision renders consideration of the sentences unnecessary at this time. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

Reversed and remanded as to each defendant for separate trials on the charges of second-degree murder and felony-firearm. In case No. 75945, the conviction of carrying a concealed weapon is affirmed.