PEOPLE v JACKSON

PEOPLE v HICKS

Docket Nos. 83790, 84255. Submitted January 13, 1987, at Detroit. Decided March 17, 1987. Leave to appeal applied for.

Stanley Jackson was convicted of armed robbery and Anthony L. Hicks was convicted of first-degree murder, armed robbery, and possession of a firearm during the commission of a felony following a jury trial in Detroit Recorder's Court and were sentenced, Warfield Moore, Jr., J. Both defendants appealed. The appeals have been consolidated.

The Court of Appeals *held*:

1. There was no error in the admission of defendant Hicks' statement to the police in which he admitted killing one of the robbery victims. Furthermore, even if there had been error in the admission of the statement, the error would be harmless since the fact that Hicks shot the victim was clearly established by other evidence.

2. The trial court did not err in admitting the confessions of Hicks, Jackson and another codefendant. The fact that the confessions were interlocking does not render them inadmissible where, as here, proper limiting instructions were given.

3. The prosecuting attorney's argument that if the jury found that defendant Hicks intended to commit an armed robbery

REFERENCES

Am Jur 2d, Criminal Law §§ 788 *et seq.*

Am Jur 2d, Evidence § 539.

Am Jur 2d, Homicide §§ 41 *et seq.*

Am Jur 2d, Trial §§ 17 *et seq.*

Comment Note.—Use in evidence of codefendant's confession or statement inculpating one or more other defendants in joint trial as denial of other defendant's right of cross-examination secured by confrontation clause of Sixth Amendment (application of Bruton Rule). 29 L Ed 2d 931.

What felonies are inherently or foreseeably dangerous to human life for purposes of felony-murder doctrine. 50 ALR3d 397.

What constitutes "custodial interrogation" within rule of Miranda v Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

they could find him guilty of first-degree murder for the killing did not result in error.

4. The trial court did not err in not defining "wilful or wanton act" when the jury indicated it was having difficulty with the concept. The court reread the entire instruction on first-degree murder, which satisfied the jury.

5. The trial court did not abuse its discretion in denying defendant Jackson's motion for severance. The defenses of the defendants were not antagonistic.

6. The trial court did not err in refusing to delete from the confessions of Jackson's codefendants statements inculpating Jackson.

7. Defendant Jackson's argument that receiving or concealing stolen property is a cognate lesser included offense of armed robbery and that the jury should have been instructed on that offense when Jackson so requested is without merit.

8. Defendant Jackson's sentence of fifteen to thirty years imprisonment for armed robbery does not shock the conscience of the Court of Appeals, and the trial court's explanation for its deviation from the sentencing guidelines provides a more than adequate basis for the sentence imposed.

9. There is no evidence that the trial court enhanced defendant Jackson's sentence because of his refusal to admit his guilt.

Affirmed.

1. CRIMINAL LAW — RIGHT TO REMAIN SILENT — SUBSEQUENT INTERROGATIONS.

The interrogation of a suspect may continue once the suspect has unequivocally stated that he wishes to remain silent, if the suspect has not on his own initiative stated that he no longer wishes to remain silent, only when: (1) the police resume questioning after a significant period of time; (2) a fresh set of *Miranda* warnings is given; and (3) the subsequent interrogation relates to a crime that was not the subject of the earlier interrogation.

2. CRIMINAL LAW — JOINT TRIALS — EVIDENCE — INTERLOCKING CONFESSIONS.

The admission of interlocking confessions by a defendant's codefendants in a joint trial does not violate the defendant's right to confrontation even though the confessions inculpate the defendant and the codefendants do not testify during the trial where the trial court gives proper limiting instructions.

3. HOMICIDE — FELONY MURDER — WILFUL AND WANTON DISREGARD.

A prosecuting attorney's argument asserting that the nature of

the underlying felony and circumstances of its commission were such as to indicate that the defendant acted in a wanton and wilful disregard of the likelihood that the natural tendency of his behavior would be to cause death or great bodily harm was not improper where the defendant's act of disregard would be sufficient for the jury to infer the malice necessary to sustain a conviction for first-degree felony murder.

4. CRIMINAL LAW — JOINT TRIALS — SEVERANCE.

A defendant who requests severance of joint trials must show fully, clearly and affirmatively that his substantial rights will be prejudiced in a joint trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Melissa Zakiya El,* for Stanley Jackson.

*Carl Ziemba,* for Anthony Hicks.

Before: R. M. MAHER, P.J., and SHEPHERD and ALLEN,* JJ.

ALLEN, J. On February 1, 1985, following a jury trial, defendant Anthony Hicks was convicted of first-degree murder, MCL 750.316; MSA 28.548, armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Codefendant Stanley Jackson was convicted of armed robbery. Codefendant Robert Minniefield, who is not a party to this appeal, was convicted of armed robbery and felony firearm. Defendants Hicks and Jackson were sentenced on February 19, 1985. Hicks received a life term in prison for the first-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

degree murder conviction, an eight- to fifteen-year prison term for the armed robbery conviction, and a mandatory two-year term for the felony-firearm conviction. Jackson received a term of fifteen to thirty years in prison for his armed robbery conviction. Hicks and Jackson appeal as of right. Their appeals were consolidated by order of this Court on February 14, 1986.

Testimony at trial established that at approximately midnight on July 6, 1984, Christine Dastgedizad suffered a contact gunshot wound to the abdomen during the course of an armed robbery in the driveway of her home. Lisa Stacy, Dastgedizad's sister, was present during the robbery and homicide. She testified that she and her sister pulled into the driveway, towards the back of the house, and were about to get out of the vehicle when two men ran up beside the car. One stuck a gun inside the car and asked for money. Dastgedizad's purse was given to the gunman, who in turn gave it to the other man. Dastgedizad was then told to start her car and both she and her sister were ordered out of the vehicle. The gunman then asked Dastgedizad for her jewelry. She was wearing eight gold bracelets, a wedding ring, other rings, and a digital watch. As she was giving the gunman her jewelry, the other man asked Stacy for a kiss. At this point, the gun went off. The gunman immediately jumped into Dastgedizad's red 1984 Camaro and drove off. Stacy did not see what happened to the other man. Stacy's only description of the two men was that they were "both negro."

Defendant Hicks was arrested during the early morning hours on July 7, 1984, after he and David Brown were pursued by police while driving Dastgedizad's Camaro. Brown testified that earlier that morning, when he was in the T & T Bar, Hicks

approached him, wanting to sell eight bracelets and a ring. Brown was not interested, but offered Hicks $2 for a ride home. After selling the bracelets, Hicks and Brown got into the red Camaro. Thereafter, Hicks spotted a police car and accelerated from thirty miles per hour to between seventy and eighty miles per hour. Brown asked Hicks what was going on as Hicks ran through three red lights with the police in pursuit. Hicks responded by handing Brown a handgun and telling him to throw it out the window, which Brown did. Hicks then told Brown that he had just robbed a "white Caucasian" and that he had shot someone. The car crashed shortly after Brown disposed of the gun.

Robert Irby testified that he met defendant Jackson at approximately 2:00 A.M., on July 7, 1984. The two men went to a party where they did some drinking. Jackson then told Irby that he, Robert Minniefield, and Anthony Hicks had robbed some "white people." Jackson said that he had waited in the car while Minniefield and Hicks robbed two women. Subsequently, Jackson told Irby that he did not know Hicks was going to shoot one of the women.

In a statement made to police shortly after his arrest, Hicks admitted that he robbed Dastgedizad and shot her, but stated that the shooting was accidental. Further, he said that he got the gun from Minniefield and that Jackson was the individual who approached the Camaro with him. He also said that he, Jackson, and Minniefield had been drinking and driving around, looking for somebody to rob.

Minniefield also made a statement. He said that Hicks told him to get his gun and to give it to Hicks. Later, Hicks and Jackson got out of his car,

saying that they planned to "get these people." According to Minniefield, Hicks and Jackson then ran up an alley. Minniefield turned a corner and waited for approximately two to three minutes. When he heard a gunshot, he took off, leaving Hicks and Jackson behind.

Jackson also made a statement after his arrest. Consistent with Hicks' statement, Jackson stated that he, Hicks, and Minniefield were driving around looking for someone to rob. Also, Jackson stated that Hicks had gotten a gun from Minniefield and that he and Hicks got out of the car and approached the two women in the Camaro. After the women got out of their car and had been relieved of their purses, Hicks fired a shot and one of the women fell to the ground. Jackson said that he threw away one of the purses after taking $70 and fled on foot. He also admitted that he told Irby about the shooting.

Between defendant Hicks and Jackson, seven issues are raised on appeal. Issues I-III are raised by Hicks; Issues IV-VII are raised by Jackson. We will address each issue separately.

I

Defendant Hicks argues that a portion of his statement given to Officer James Lally was erroneously admitted into evidence. He maintains that he invoked his right to remain silent when asked about the murder weapon, that he was not readvised of his *Miranda*[1] rights before questioning resumed after a twenty-minute interval, and that he was coerced into incriminating himself when David Brown was brought into the interrogation room. Defendant concludes that these factors ren-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

dered the latter portion of his statement, in which he admitted killing Dastgedizad, involuntary.

Police may not continue questioning an individual if, after he initially agrees to questioning, he invokes his right to remain silent. *Miranda, supra,* 384 US 473-474. Nonetheless, *Michigan v Mosley,* 423 US 96, 104-106; 96 S Ct 321; 46 L Ed 2d 313 (1975), indicates that under some circumstances questioning may be resumed after a defendant has invoked said right. Such a resumption was condoned in *Mosley, supra,* where a significant period of time had elapsed since the defendant had invoked his right to remain silent and the defendant was readvised of his *Miranda* rights. However, these protections are indicated only when a defendant's invocation of his right to remain silent is unequivocal. See *People v Catey,* 135 Mich App 714; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985).

In the present case, there is nothing in the transcript of defendant's statement which even suggests that he was invoking his right to remain silent. However, at defendant's *Walker* [2] hearing, Officer Lally stated that he stopped taking defendant's statement at 10:45 A.M., and that he and defendant then signed a typed copy of the statement. Lally gave the following reason for stopping the interrogation at that time:

> I stopped the statement for a few minutes, asked him about the gun and *he didn't want to say anything about the gun* at that time. We brought Mr. Brown into the office and in his presence we asked Mr. Hicks again about who had the gun, and at that time in front of David Brown he admitted that he had given David the gun to

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

throw out the window while the police were chasing him. [Emphasis added.]

Lally resumed the taking of defendant's statement at 11:05 A.M.

Defendant relies on Lally's statement that "he didn't want to say anything about the gun" as an indication that he invoked his right to remain silent. We believe that such a statement is more appropriately regarded as an indication that defendant did not want to broach a particular subject matter. He did not indicate that he no longer wished to speak with Officer Lally. Thus, at best, this was an equivocal indication that defendant was invoking his right to remain silent and, accordingly, we do not view Officer Lally's continuing interrogation as improper.

Defendant also argues that he was coerced into incriminating himself when he was confronted by Brown, who, defendant claims, had already incriminated him. Defendant cites a number of cases where analogous confrontations were deemed coercive. See *United States v Olos,* 527 F2d 752, 754 (CA 9, 1975); *Toliver v Gathright,* 502 F Supp 144 (ED Va, 1980); *United States v Bensinger,* 463 F2d 576, 578 (CA 7, 1972); *State v Uganiza,* 702 P2d 1352 (Hawaii, 1985); *State v Durand,* 406 Neb 415; 293 NW2d 383 (1980). However, in all of the foregoing cases, the defendants had invoked their right to remain silent before such techniques were employed. Since we have already determined that there was no conclusive indication that defendant had invoked such a right, we regard these authorities as inapposite.

Even if the latter portion of defendant's statement was improperly admitted, the error was harmless. Although defendant admitted in this portion of the statement that he shot Dastgedizad,

this fact was clearly established by other evidence. In the portion of defendant's statement which is not challenged, he admits robbing Dastgedizad and driving off in her car. Stacy testified that the man who took her sister's jewelry and car was the person who shot her sister. David Brown and James Elder, the owner of the T & T Lounge, testified that defendant was at the bar within two hours of the shooting and tried to sell some of the victim's jewelry. Defendant then left the bar with David Brown, driving Dastgedizad's red Camaro, which was wrecked following a high-speed chase with police. Brown testified that during the police pursuit of their vehicle, Hicks handed him a gun and told him to throw it out the window. Moreover, prior to their arrest, defendant told Brown that he got the jewelry and car during the robbery of a "white Caucasian" whom he had shot. Since this testimony clearly indicates that defendant was the gunman, we deem any error with respect to defendant's confession as harmless beyond a reasonable doubt. See *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

II

Defendant Hicks claims that the trial court erred in admitting the confessions of all three defendants based on the fact that they were interlocking and on the authority of *Parker v Randolph,* 442 US 62; 99 S Ct 2132; 60 L Ed 2d 713 (1979). Defendant specifically objects to the admission of codefendant Jackson's statement, as it implicated defendant Hicks in the shooting of Dastgedizad. Defendant relies on *Bruton v United States,* 391 US 123, 136; 88 S Ct 1620; 20 L Ed 2d 476 (1968), which held that the admission in a joint trial of a nontestifying codefendant's confes-

sion violates the other defendant's Sixth Amendment right of confrontation. We note that *Bruton, supra,* predated *Parker, supra,* in which a plurality of four justices held that the admission of interlocking confessions with proper limiting instructions conformed to the requirements of the Sixth and Fourteenth Amendments. 442 US 75.

Defendant argues that the exception to *Bruton, supra,* recognized in *Parker, supra,* should not be adopted with respect to the Michigan Constitution. However, this Court has already held that such an exception should obtain. See *People v Hartford,* 117 Mich App 413, 418-420; 324 NW2d 31 (1982), lv den 419 Mich 859 (1984); *People v Miller,* 88 Mich App 210, 221; 276 NW2d 558 (1979), rev'd on other grounds 411 Mich 321 (1981). In the absence of a statement to the contrary by the Michigan Supreme Court, we are not persuaded that it would be wise to deviate from these federal and state rulings. Accordingly, we find that Jackson's interlocking confession, with required limiting instructions, was properly admitted.

We note that the mainstay of this argument hinges on defendant's first argument being successful. The essence of defendant's objection to Jackson's statement is that Jackson implicated defendant as the person who shot Dastgedizad. Since we previously held that the latter part of defendant Hicks' statement, in which he admitted shooting Dastgedizad, was properly admitted, Jackson's statement appears harmless.

III

Defendant Hicks argues that during closing argument the prosecutor misled the jury by reciting the common-law felony-murder doctrine, which was abolished in *People v Aaron,* 409 Mich 672;

299 NW2d 304 (1980). In *Aaron,* the Court held that the malice necessary to raise a homicide to first-degree felony-murder could not be established by merely proving that the defendant had the intent to commit the underlying felony. The Court went on to define the necessary malice as

> the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. [409 Mich 728.]

In the present case, we do not view the prosecutor's closing argument as a misconstruction of *Aaron, supra;* i.e., we disagree with defendant's interpretation of the prosecutor's argument to the extent defendant contends that the prosecutor stated that if the jury found that the defendant intended to commit an armed robbery, they could find defendant guilty of first-degree murder. Rather, we construe the prosecutor's argument as an assertion that the nature of the underlying felony and the circumstances of its commission were such as to indicate that defendant acted in a wanton and willful disregard of the likelihood that the natural tendency of his behavior would be to cause death or great bodily harm. Pursuant to *Aaron, supra,* this intent would be sufficient to sustain a conviction for first-degree felony-murder. Accordingly, we find no error.

In a related argument, defendant maintains that the trial court erred when it failed to define "willful or wanton act" after jury deliberations began and the jury indicated that it might be having difficulty with the concept. The note from the jury requested reinstruction on "the last elements of first degree murder" but referred to this element

as "the one that states wanton and willful action." As this was confusing, the trial court inquired of the foreperson whether the jury wanted a definition of "wanton and willful act" or whether the jury wanted to be reinstructed on the charge of first-degree murder. When there appeared to be some confusion over what the jury actually desired, the court reread the entire instruction on first-degree felony murder. The foreperson indicated that the jury was satisfied at the conclusion of this instruction.

Defendant argues that the trial court should have defined wanton and willful action for the jury. However, the jury did not request such a definition. Since the trial judge properly instructed the jury on the elements of first-degree felony murder in accord with CJI 16:2:02 and *Aaron, supra,* and the jury indicated that it was satisfied with this instruction, we find no indication of error.

Defendant Hicks' convictions and sentences are affirmed.

IV

Averring that his codefendants would offer antagonistic defenses, defendant Jackson maintains that the trial court abused its discretion in denying his motion for severance. Although the decision as to whether separate trials should be granted is committed to the sound discretion of the trial court, severance should be granted where the separate defenses of codefendants are antagonistic. See *People v Espinosa,* 142 Mich App 99, 103-104; 369 NW2d 265 (1985), lv den 424 Mich 855 (1985). A defense is deemed antagonistic when it appears that a codefendant may testify to exculpate himself and to incriminate the defendant. See *Miller,*

*supra,* p 222. When a confession incriminates code-fendants and inculpates the defendant, it is not antagonistic. *Id.,* pp 222-223. Nonetheless, it is not necessary that defendants directly accuse one another of being guilty in order for defenses to be construed as antagonistic and separate trials as warranted. When the proofs or defense theories pit one defendant against another, severance may be indicated, as

> [a]ny set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another is sufficient to require a separate trial. [*Espinosa, supra,* p 104, quoting *People v Hurst,* 396 Mich 1, 7; 238 NW2d 6 (1976).]

When a defendant moves for severance, he bears the burden of showing fully, clearly and affirma-tively that he has substantial rights which will be prejudiced in a joint trial. See *People v Byrd,* 133 Mich App 767, 776; 350 NW2d 802 (1984), lv den 419 Mich 960 (1984).

We see no evidence that defendant Jackson carried his burden of demonstrating that his de-fense and those of his codefendants were antago-nistic. His defense counsel's theory was that defen-dant Jackson was unaware that Hicks was intend-ing to rob anyone, that Jackson never touched the gun, and that Jackson never took property directly from either victim or acted violently towards ei-ther victim. However, this theory was contradicted by Jackson's own statement:

> When we got into the car Boo [Minniefield] gave Anthony [Hicks] the gun. Then we drove down to the Climax on Lafayette. Anthony jumped out of the car with the gun to find somebody to rob, but he didn't find anyone to rob. Anthony said, "We can't hit no lick, there's too many guards around."

Then we drove back down to Chalmers and Harper to a coney island. We went in there and ate. I asked Anthony for the gun because I wanted to be holding it during the robbery. After we left the restaurant Anthony said, "Let's find somebody to rob." He said we could rob somebody at the light. We then went down Chalmers toward Eight Mile. When we got to Chalmers and Seymour the light was red. While we were at the light a small car pulled off of Chalmers and into the alley behind a house. Anthony said, "There go a hit right there." Then Anthony said, "Look, man, I'm fixing to stick these two white whores up." Anthony got out of the car first with the pistol in his hand and I was in the back seat and got out with him. We then ran up to the driver's side and Anthony had the gun in her face. Anthony told her four times, "Give me your money, I am not playing." Then he told them both to get out the car. They both got out of the car and he made both of them stand by the passenger side of the car. Then he told the driver to give him the keys. He told them to give him their purses before they got out of the car, and they did. He gave me one of the purses. I think he told them to lay down on the ground. Before they laid down he said, "This is a warning," and then he shot and the lady fell on the ground. Anthony jumped in the car and I ran to Chalmers. I turned left on Chalmers and went to the first street and went right. I went down about seven houses from Chalmers and took $70.00 out of the purse and threw it down in front of the house.

Jackson's statement clearly shows that he knew an armed robbery was going to be committed and that he was a willing participant in that robbery. This statement was consistent with, and not antagonistic to, that of codefendant Hicks. Hicks admitted that he was the gunman and described the same sequence of events described by Jackson. Since Hicks' statement inculpated Hicks, his de-

fense was not antagonistic to that of defendant Jackson even though Hicks' statement incriminated Jackson. See *Miller, supra.* Although codefendant Minniefield contradicted his pretrial statement at trial, his pretrial statement did not indicate that his defense would be antagonistic to that of Hicks or Jackson. Moreover, his pretrial statement tended to prejudice him as much as it did his codefendants. Thus, pursuant to *Miller, supra,* no antagonistic defense was indicated. Accordingly, we find no abuse of discretion.

V

Defendant Jackson next asserts that the trial court erred in refusing to delete from the confessions of Hicks and Minniefield statements which inculpated Jackson. Defendant relies on *Bruton, supra,* and *Miller, supra,* in arguing that the incriminating statements should have been omitted even if the confessions were interlocking. Based on *Parker, supra,* we find no error in the admission of these statements. However, even if there were error, we note that defendant Jackson did not object to the admission of his own confession into evidence. In his confession, Jackson admitted to aiding and abetting an armed robbery. Defendant Jackson's statement did not differ in any material respects from the confessions of Hicks and Minniefield. While this supports the determination that the confessions were interlocking and that the codefendants' statements were therefore properly admitted, we note that it also suggests that error, if any, was harmless at best. See *Robinson, supra.*

VI

Defendant Jackson avers that receiving or con-

cealing stolen property is a cognate lesser included offense of armed robbery and that the jury should have been instructed on this offense when defendant so requested. Both tenets of defendant's argument were refuted in *People v Harris,* 82 Mich App 135, 137-138; 266 NW2d 477 (1978). Accordingly, we find this argument to be wholly without merit.

## VII

Defendant Jackson maintains that his sentence of fifteen to thirty years imprisonment for armed robbery should shock the conscience of this Court under the standard enunciated in *People v Coles,* 417 Mich 523, 550-551; 339 NW2d 440 (1983). Since the recommended minimum sentencing range under the sentencing guidelines was from four to seven years and this crime constituted defendant's first felony, defendant argues that the trial court abused its discretion in imposing a more lengthy sentence. However, we believe that the trial court's explanation for its deviation from the guidelines provided a more than adequate basis for the sentence imposed:

> I am varying from the guidelines, sir, because a life was taken. I am varying it not only because a life was taken, but there was a street crime. Not only street crime, but the evidence seems to indicate that you were out prowling the streets looking for a victim in which to pounce upon, and once you found that victim, sir, you together with the other two gentlemen did exactly what was done.
> For all of those reasons, sir, I think that this crime has more viciousness than the normal, or not— There is no such thing as normal. Than the usual kind of robbery, sir, and you were out there pouncing in the middle of the night upon some innocent victim, and that has resulted in the life-

taking of a person. You knew about the gun, you knew it was there, you knew the propensity of the persons you were with, and you, too, will suffer the consequences.

The conscience of this Court is not shocked.

Jackson also alleges that the trial judge may have enhanced his sentence, contrary to *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974), because of the defendant's refusal to admit his guilt. Defendant bases this assertion on a comment by the trial court to the effect that defendant attempted to minimize his responsibility for this offense by blaming it on his intoxication. Although the trial court indicated that it was not sympathetic with the argument that defendant's responsibility should be minimized because of his intoxication, there is no evidence that this factor was used to enhance defendant's sentence. The trial court expressly stated that it was not increasing defendant's sentence because of this excuse. Moreover, the court gave valid reasons for exceeding the recommendation of the sentencing guidelines. Defendant Jackson's conviction and sentence are affirmed.

Affirmed.