PEOPLE v SLOCUM (ON REMAND)

Docket No. 190122. Submitted October 1, 1996, at Detroit. Decided
November 5, 1996, at 9:05 A.M.

Colleen Slocum was charged in the Detroit Recorder's Court with
conspiracy to commit first-degree murder, conspiracy to commit
kidnapping, assault with intent to murder, first-degree home inva-
sion, obstruction of justice, and possession of a firearm during the
commission of a felony. Following her arrest, the defendant had
been advised of her rights under *Miranda v Arizona,* 394 US 436
(1966), and had invoked the privilege against compelled self-
incrimination when the police attempted to interrogate her.
Twenty-two hours later, while still in custody and after the defend-
ant had again been advised of her *Miranda* rights, she gave a self-
incriminating statement. The court, Leonard Townsend, J., granted
a motion by the defendant to suppress evidence of the incriminat-
ing statement. The prosecution filed a delayed application for leave
to appeal the suppression order. The Court of Appeals denied leave
to appeal. The Supreme Court, in lieu of granting leave, remanded
the matter to the Court of Appeals for consideration as on leave
granted. 450 Mich 890 (1995).

On remand, the Court of Appeals *held*:

When a defendant invokes the privilege against compelled self-
incrimination during a police interrogation, the police must cease
all questioning at that interview. A subsequent interrogation can be
initiated if the police give a fresh set of *Miranda* warnings and
scrupulously honor the defendant's assertion of the privilege
against compelled self-incrimination. In this case, the trial court
erred in suppressing evidence of the defendant's statement inas-
much as the totality of the circumstances clearly indicates that the
police scrupulously honored the defendant's assertion of the privi-
lege against compelled self-incrimination.

Reversed and remanded for trial.

CONSTITUTIONAL LAW — PRIVILEGE AGAINST COMPELLED SELF-INCRIMINATION —
MULTIPLE INTERROGATIONS.

An interrogation of a person who is in the custody of the police and
has invoked the privilege against self-incrimination may again be
initiated if the police readvise the person of the person's rights

under *Miranda v Arizona*, 394 US 436 (1966), and scrupulously honor the person's assertion of the privilege against compelled self-incrimination (US Const, Am V).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people.

ON REMAND

Before: MARKMAN, P.J., and SMOLENSKI and G. S. BUTH,* JJ.

MARKMAN, P.J. Defendant was charged with conspiracy to commit first-degree murder, MCL 750.316; MSA 28.548 and MCL 750.157a; MSA 28.354(1); conspiracy to commit kidnapping, MCL 750.349; MSA 28.581 and MCL 750.157a; MSA 28.354(1); assault with intent to murder, MCL 750.83; MSA 28.278; first-degree home invasion, MCL 750.110a; MSA 28.305(a); obstruction of justice, MCL 750.505; MSA 28.773; and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The trial court granted defendant's motion to suppress evidence of her statement to the police. The prosecution filed a delayed application for leave to appeal from the trial court's order. This Court denied leave to appeal. *People v Slocum*, unpublished order of the Court of Appeals, entered September 20, 1995 (Docket No. 186348). The prosecution filed an application for leave to appeal with the Michigan Supreme Court, which, in lieu of granting leave to appeal, remanded the matter to this

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Court for consideration as on leave granted. *People v Slocum*, 450 Mich 890 (1995). We reverse.

Defendant was arrested on November 23, 1994, for her alleged involvement in the fatal shooting of an elderly man. After her arrest, the police questioned her at police headquarters beginning at approximately 2:10 P.M. Defendant was advised of her *Miranda*[1] rights and she refused to make a statement. The police stopped their interrogation of defendant and moved her to a holding cell.

The officer who interrogated defendant thereafter learned additional information regarding her involvement in this crime. On the basis of this new information, on the next day at approximately 11:45 A.M., the officer again advised her of her *Miranda* rights and asked defendant if she would answer questions about this matter. At that time, defendant made a statement to the police that incriminated her in the murder.

The prosecution argues that the trial court erred as a matter of law in ruling that *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), required the police to refrain from reinitiating the questioning of defendant once she had asserted the privilege against compelled self-incrimination under the Fifth Amendment. This Court reviews questions of law regarding constitutional issues de novo. *People v Houstina*, 216 Mich App 70, 73; 549 NW2d 11 (1996).

First, we note that the present case involves a defendant's assertion of the privilege against compelled self-incrimination, not an assertion of the right to counsel. Regarding the latter, the United States

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Supreme Court stated in *Minnick v Mississippi*, 498 US 146, 150; 111 S Ct 486; 112 L Ed 2d 489 (1990):

> [A]n accused who requests an attorney, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." [*Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981).]

The Court addressed the issue of police reinitiation of questioning of defendants who have asserted the privilege against compelled self-incrimination in *Michigan v Mosley*, 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975). In *Mosley*, the police gave *Miranda* warnings and questioned the defendant about several robberies, the defendant stated that he did not want to discuss the robberies, and the police ceased the interrogation. Approximately two hours later, a different officer gave *Miranda* warnings to the defendant and questioned him regarding an unrelated murder, and the defendant made an incriminating statement. The *Mosley* Court, at 100-101, began its analysis by quoting *Miranda*, 384 US 473-474:

> "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."

The *Mosley* Court noted that this passage "does not state under what circumstances, if any, a resumption of questioning is permissible." *Mosley*, at 101. It stated that the continuation of questioning after only a momentary cessation would frustrate the purposes of *Miranda* by "allowing repeated rounds of questioning to undermine the will of the person being questioned." *Id.* at 102. It also stated:

> At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. [*Id.*]

The Court held that *Miranda* could not "sensibly be read to create a per se proscription of indefinite duration" on further police questioning after a person in custody asserts the privilege against compelled self-incrimination. *Id.* at 102-103. It then set forth its holding:

> We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored." [*Id.* at 104.]

The *Mosley* Court then applied this standard to the facts before it. It distinguished the case before it from cases where the police failed to honor a person's right to cut off questioning by refusing to discontinue an interrogation upon request or by "persisting in repeated efforts to wear down his resistance and

make him change his mind." *Id.* at 105-106. It summarized the relevant facts of the case before it: "[T]he police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Id.* at 106. It concluded that the admission of the defendant's incriminating statement in the case before it did not violate the principles of *Miranda. Id.* at 107.

In *People v Crusoe*, 433 Mich 666, 683, n 25; 449 NW2d 641 (1989), the Michigan Supreme Court summarized *Mosley* as follows: "[W]hen a defendant invokes the right during interrogation that he wishes to remain silent, the police must cease all questioning at that interview but can then initiate a subsequent interrogation if law enforcement officials 'scrupulously' honor the defendant's assertion of the right to remain silent."

This Court has attempted to provide guidelines for when the police may reinitiate interrogation of defendants who have asserted the privilege against compelled self-incrimination. In *People v Catey*, 135 Mich App 714, 722, 726; 356 NW2d 241 (1984), this Court held that the defendant at issue had never unequivocally invoked the privilege against compelled self-incrimination and therefore that any subsequent interrogation was permissible. However, in dicta, the *Catey* Court set forth the following gloss on *Mosley* at 725:

> From this language we conclude that once a prisoner has stated that he wishes to remain silent, interrogation may

only continue (if the prisoner has not on his own initiative stated that he no longer wishes to remain silent) when:

(a) the police resume questioning after a significant period of time;

(b) a fresh set of *Miranda* warnings is given;

(c) the subsequent interrogation relates to a crime that was not the subject of the earlier interrogation.

Furthermore, even if the above criteria are met, the subsequent interrogation may not have the characteristics of a repeated effort to wear down the resistance of the prisoner and make him change his mind.

While these factors accurately summarize the relevant facts in *Mosley*, the *Mosley* Court never suggested that these were the *only* circumstances under which questioning could be properly reinitiated after assertion of the privilege against compelled self-incrimination. We disagree with *Catey* to the extent that it may be read to set forth mandatory criteria for the reinitiation of questioning after assertion of this privilege. We do not believe that the "scrupulously honored" standard set forth in *Mosley*, and affirmed in *Crusoe*, is necessarily susceptible to the kind of black-and-white line drawing attempted in *Catey*. The first two *Catey* criteria may fairly be considered significant factors in assessing the constitutional propriety of the reinitiation of questioning after assertion of the privilege against compelled self-incrimination. The absence, for example, of a substantial time lapse between the assertion of the privilege and the reinitiation of questioning might raise a question about whether the police actually ceased questioning upon assertion of the privilege or whether they were "persisting in repeated efforts to wear down his resistance and make him change his mind." *Mosley*, at 105-106. Similarly, the failure to again advise a defendant

of his *Miranda* rights after assertion of the privilege might dilute the requirement that the defendant be informed of his right to cut off police questioning. Therefore, these factors are certainly highly relevant considerations in determining whether renewed questioning after assertion of the privilege is constitutional under *Mosley*.

But the third *Catey* criterion—that the subsequent interrogation relate to a different crime than the first interrogation—does not seem to us to be essential to "scrupulously honoring" a defendant's assertion of the "right to cut off questioning." That a subsequent interrogation *does* relate to a different crime than the first interrogation would certainly support an inference that the subsequent interrogation was not in derogation of a defendant's assertion of the privilege against compelled self-incrimination. However, the converse is not necessarily true. Questioning a defendant, after assertion of the privilege, regarding the same charges discussed during the first interrogation would not necessarily indicate a failure to "scrupulously honor" assertion of the "right to cut off questioning." It indicates nothing more than that a second attempt to interrogate the defendant has taken place—the very subject matter at issue in *Mosley*. The Court in *Mosley* specifically rejected "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation" because it would "transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Mosley*, at 102. In other words, *Mosley* was intended to further not only the legitimate interests of

police investigation but also the interests of suspects in reconsidering initial decisions not to speak to the police.

We note that in *People v Jackson*, 158 Mich App 544; 405 NW2d 192 (1987),[2] this Court's articulation of the *Mosley* holding addressed only the first two *Catey* criteria. It stated at 550:

> Police may not continue questioning an individual if, after he initially agrees to questioning, he invokes his right to remain silent. Nonetheless, [*Mosley*] indicates that under some circumstances questioning may be resumed after a defendant has invoked said right. Such a resumption was condoned in *Mosley, supra,* where a significant period of time had elapsed since the defendant had invoked his right to remain silent and the defendant was readvised of his *Miranda* rights. [Citation omitted.]

Indeed, *Catey* itself indicates that its three criteria are not dispositive regarding the constitutionality of the reinitiation of questioning after assertion of the privilege against compelled self-incrimination. Immediately after setting forth its criteria, the *Catey* Court stated at 725:

> All of these requirements are in furtherance of the *Mosley/Miranda* doctrine that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' "

---

[2] Like *Catey*, *Jackson* turned on a defendant's failure to unequivocally assert the privilege against compelled self-incrimination. Therefore, the analysis of the constitutionality of reinitiating interrogation of defendants who have asserted the privilege against compelled self-incrimination in both *Catey* and *Jackson* is dicta.

Thus, the *Catey* Court itself recognizes that the ultimate inquiry is whether the police have "scrupulously honored" a defendant's assertion of the "right to cut off questioning."

Here, the trial court relied on the criteria set forth in *Catey* in granting defendant's motion to suppress. As discussed above, the *Catey* criteria are not dispositive of the constitutionality of the reinitiation of questioning after assertion of the privilege against compelled self-incrimination. The proper inquiry is whether the police "scrupulously honored" the defendant's assertion of the "right to cut off questioning." *Mosley*, at 103. The *Catey* criteria should be considered only to the extent that they are relevant in conducting this inquiry. Here, the evidence indicates that, in their first attempt to question defendant, the police advised her of her *Miranda* rights and immediately ceased questioning when she asserted the privilege against compelled self-incrimination. Approximately twenty-two hours later, in response to additional information regarding the crime at issue being brought to their attention, the police decided to question defendant a second time. They again advised her of her *Miranda* rights. Defendant then made the incriminating statement at issue concerning her involvement in the murder.

Thus, at the time defendant decided to make the statement that incriminated her, she knew, in connection with the initial interrogation, that the police had informed her of her *Miranda* rights, ceased questioning her when she asserted the privilege against compelled self-incrimination, and had not attempted to question her again for approximately twenty-two hours. In the context of the response of the police to

her assertion of the privilege against compelled self-incrimination during the initial interrogation, defendant had no reason to believe that they would not honor the privilege if she again asserted it. This is not a case where the police made repeated attempts to question defendant despite her assertion of this privilege to the extent that an inference might have arisen in her mind that they would not honor her assertion of the privilege. The evidence does not suggest that the police were "persisting in repeated efforts to wear down [her] resistance and make [her] change [her] mind." *Mosley*, at 105-106. We believe that the totality of these circumstances clearly indicates that the police "scrupulously honored" defendant's assertion of the "right to cut off questioning."[3] Accordingly, the trial court erred in suppressing defendant's statement.

We derive our approach from *Mosley*. An interrogation of a defendant, whether it is the first interrogation or the fifth, must meet the basic *Miranda* requirements that the defendant be advised of certain rights and that any incriminating statement the defendant makes be voluntary. However, where there is more than one interrogation of a defendant who has asserted his privilege against self-incrimination, there are additional concerns that the police might be attempting to "wear down his resistance and make him change his mind," *Mosley*, at 105, or that their

---

[3] Nothing in this case should be construed to set forth any particular minimal standards for determining when a defendant's assertion of the "right to cut off questioning" has been "scrupulously honored." We simply hold that each case requires an analysis of the totality of the circumstances that inhere in the custodial interrogation. Among the conceivably relevant circumstances to such an inquiry, not expressly mentioned by *Catey*, are the availability of significant new information on the part of the police, as in the instant case, and the presence or absence of a different police interrogator as in *Mosley*, *supra* at 104.

actions might communicate to the defendant that they will not honor his assertion of the privilege. The *Mosley* Court recognized these concerns. It accordingly held that the admissibility of statements obtained after a defendant initially asserted the privilege against compelled self-incrimination would turn on whether the police "scrupulously honored" the assertion of the "right to cut off questioning."

For these reasons, we reverse the trial court order suppressing defendant's statement and remand for trial. We do not retain jurisdiction.