PEOPLE v WILLIAMS

Docket No. 265237. Submitted April 4, 2007, at Detroit. Decided April 10, 2007, at 9:05 a.m. Leave to appeal denied, 480 Mich ___.

Reginald Williams, in a bench trial in the Wayne Circuit Court, Annette J. Berry, J., was convicted of armed robbery, carjacking, and retaining a financial transaction device without consent. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not deprive the defendant of due process on the asserted ground that it coerced the defendant into accepting a bench trial rather that a jury trial. The trial court clearly ascertained that the defendant understood the right to a jury trial and that he voluntarily chose to give up that right and be tried by the trial court. The trial court did not threaten the defendant with a delay in the proceedings if he asserted the right to a jury trial, but merely offered the defendant an accommodation of his wish to proceed to trial earlier than the date on which a jury trial could be held.

2. Trial counsel did not render ineffective assistance when counsel did not seek the exclusion of evidence of the defendant's second police interview. The defendant's refusal to allow the transcription of his statement in the first interview did not amount to an invocation of his right to remain silent and cut off questioning. In any event, the defendant was again advised of his rights before the start of the second interview. Trial counsel cannot be ineffective in not making what would have been a futile attempt to seek the exclusion of evidence of the second interview.

Affirmed.

CRIMINAL LAW — RIGHT TO REMAIN SILENT — REFUSALS OF TRANSCRIPTIONS OF STATEMENTS.

A defendant who gives an oral statement to the police after being advised of his right to remain silent does not invoke the right by refusing to allow a transcription of the statement.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Thomas M. Chambers*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*) for the defendant.

Before: WILDER, P.J., AND SAWYER AND DAVIS, JJ.

DAVIS, J. Following a bench trial, defendant was convicted of armed robbery, MCL 750.529, carjacking, MCL 750.529a, and retaining a financial transaction device without consent, MCL 750.157n(1). He was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 12 to 25 years for the armed robbery and carjacking convictions and one to four years for the financial transaction device conviction. He appeals as of right. We affirm.

At approximately 9:30 p.m. on December 17, 2004, a man wearing a tan hooded Carhartt jacket and jeans approached Patti Harris in a parking lot outside a drug store in Detroit. The man had a silver object that Harris believed was a gun. The man forced Harris into her Jeep, but she escaped and fled, and the man drove away with her purse, credit cards, cellular telephone, identification, and other items. Harris reported the crime to the police approximately 10 or 15 minutes later. At 1:00 a.m., Detroit Police Officer Kari Kammerzall found the Jeep outside a gas station and observed defendant wearing a hooded Carhartt jacket and jeans. Kammerzall observed defendant drop something into a garbage can, from which Harris's keys were later recovered. Defendant was arrested and discovered to be in possession of several of Harris's other items, including

her identification and Social Security card, as well as a silver butter knife. Defendant was interviewed by two police investigators; he told one of them that he was trying to broker a sale of the Jeep at the gasoline station, and he told the other that he came into possession of items belonging to the victim from a group "hanging out" at the station. Harris was unable to identify defendant in a corporeal lineup, but she identified him at the preliminary hearing and at trial. A witness to the robbery testified that she could not see the robber's face, but the man wore a tan Carhartt coat and something on his head. Defendant testified that he did not commit the robbery and had been elsewhere when it took place. The trial court deemed the prosecution's witnesses credible and defendant not credible. The trial judge found defendant guilty of all charges.

Defendant first argues that the trial court deprived him of due process by coercing him into accepting a bench trial instead of a jury trial. We disagree.

The record shows that on July 18, 2005, the trial court refused to accept a plea agreement because of defendant's assertions of innocence. Defendant objected to the length of time he would need to wait for a trial. The trial court expressed sympathy for defendant's desire to go home, and noted that trial was scheduled for August 25, 2005, because the trial court had received the case from another courtroom and needed to schedule trial according to the court's docket. However, the trial court explained that it would be possible "to handle this matter a lot sooner" if defendant was willing to accept a bench trial. The trial court agreed to a recess when defense counsel requested an opportunity to speak with defendant, but defendant interjected, "No, no, I want—I want to go home," and indicated that he wished to accept the bench trial arrangement. The

trial court personally questioned defendant to ascertain
that he had been afforded an opportunity to speak with
defense counsel regarding his waiver and that he was
knowingly and voluntarily waiving his right to a jury
trial.

It is clear from the record that defendant was not in
any way coerced into accepting a bench trial. Further-
more, the trial court, pursuant to MCR 6.402(B), clearly
ascertained, "by addressing the defendant personally,
that the defendant understands the right [to a trial by
jury] and that the defendant voluntarily chooses to give
up that right and to be tried by the court." We find no
clear error in the trial court's determination that de-
fendant validly waived his right to a jury trial. *People v
Leonard*, 224 Mich App 569, 595; 569 NW2d 663 (1997).
The trial court did not threaten defendant with a delay
if he asserted his right to a jury trial; rather, the trial
court offered defendant the opportunity for an accom-
modation that would necessarily entail waiving the
right to a jury trial. The trial court did not suggest to
defendant that he would be punished or granted le-
niency for either choice. We do not see any pressure
applied by the trial court to defendant, and we do not
believe it was coercive for the trial court to permit
defendant to make his own decision. Defendant was not
coerced, and defendant freely waived his right to a jury
trial.

Defendant next argues that he received ineffective
assistance of counsel because trial counsel did not move
to suppress evidence of defendant's statement to the
second police interviewer, Investigator Derek Duff. De-
fendant contends that his second interview violated his
*Miranda*[1] rights and played a significant role in the trial
court's finding that defendant's testimony was not

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

credible. Specifically, defendant contends that his refusal to give a written statement to the first interviewer, Investigator Philip Wassenaar, precluded Investigator Duff from approaching him to conduct a second interview. We disagree.

In *Michigan v Mosley*, 423 US 96, 103; 96 S Ct 321; 46 L Ed 2d 313 (1975), the Supreme Court recognized that a person's right to cut off questioning is a "critical safeguard" under *Miranda.* See also *People v Adams,* 245 Mich App 226, 230; 627 NW2d 623 (2001). But *Mosley, supra* at 102-103, did not establish a blanket prohibition against further interrogation after a person cuts off questioning. *People v Slocum (On Remand)*, 219 Mich App 695, 702; 558 NW2d 4 (1996). Whether a custodial statement obtained after a person decides to remain silent is admissible depends on whether the right to cut off questioning was scrupulously honored by the police. *Mosley, supra* at 104; *Adams, supra* at 231. Relevant factors in determining whether the police could resume interrogation are whether a significant time elapsed since the person invoked the right to remain silent and whether the person was again advised of *Miranda* rights. *Slocum, supra* at 703.

Courts in other jurisdictions have held that a mere refusal to reduce an oral statement to a written statement does not amount to the invocation of the right to remain silent. See *Crosby v State,* 366 Md 518, 529-530; 784 A2d 1102 (2001); *People v Hendricks,* 90 NY2d 956; 687 NE2d 1328; 665 NYS2d 45 (1997); *State v Adams,* 127 NJ 438, 446-447; 605 A2d 1097 (1992); *State v Moorehead,* 811 SW2d 425, 430 (Mo App, 1991). The *Crosby* court cautioned that, if a person chooses silence over speech, as opposed to one form of speech over another, the police must scrupulously honor the right to remain silent. *Crosby, supra* at 529-530, 534-535. The

Hawaii Supreme Court observed that a refusal to give a statement constitutes an invocation of the right to remain silent, but the same right is not necessarily invoked where a defendant voluntarily gives a statement but refuses to permit that statement to be recorded on an audiotape. See *State v Rodrigues*, 113 Hawaii 41, 49; 147 P3d 825 (2006).[2]

Here, defendant actually gave an initial statement to Investigator Wassenaar and refused only to reduce that statement to writing. Therefore, the prevailing rule would appear to be that defendant did not invoke his right to remain silent. Nevertheless, Wassenaar treated defendant's refusal to provide a written statement as an invocation of his right to remain silent and scrupulously honored that perceived invocation. *Mosley, supra* at 104; *Adams, supra* at 231. Defendant was not approached again until ten hours later, when Investigator Duff again advised defendant of his *Miranda* rights before commencing a second interview. *Slocum, supra* at 703. We note, by way of contrast, that if defendant had invoked his right to an attorney, the second interview would have been precluded unless defendant himself initiated it. *People v Crusoe*, 433 Mich 666, 683; 449

---

[2] The Hawaii court discussed two cases. In one, the defendant had previously given a statement but refused to give another one with a tape recorder running; the second refusal constituted an invocation of the right to remain silent, precluding the prosecution from commenting at trial on that refusal. *State v Woods*, 249 Neb 138; 542 NW2d 410 (1996). In the other case, the defendant gave a voluntary statement to the police but refused to permit the police to audiotape it, which was deemed not to be an invocation of the right to remain silent. *Ball v State*, 347 Md 156; 699 A 2d 1170 (1997). As the Hawaii court observed, the common touchstone is whether a defendant consents to giving a statement. Thus, refusing to give a statement on audiotape constitutes an invocation of the right to remain silent, but refusing to permit the police to record a statement that is nevertheless actually given does not constitute an invocation of that right.

NW2d 641 (1989). Defendant was not denied his rights, and evidence of the second interview was not inadmissible on the basis of *Miranda*. Trial counsel cannot be ineffective for failing to make a futile objection, so we cannot conclude that trial counsel was ineffective for failing to seek the exclusion of the second interview on *Miranda* grounds. *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005).

Defendant alternatively requests a remand for an evidentiary hearing. This Court denied defendant's earlier motion to remand. Because defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective, we again deny defendant's request for a remand. MCR 7.211(C)(1)(a); see also *People v Hernandez,* 443 Mich 1, 15; 503 NW2d 629 (1993) (the decision whether to grant a remand is discretionary).

Affirmed.